This is an appeal from a judgment in the Circuit Court of Marshall County for plaintiff First State Bank of Albertville. We affirm in part; reverse in part; and remand.
On November 30, 1977, Tim Williamson (not involved in this appeal) negotiated a purchase price on a 1976 Dodge van with the general manager of H.M. Freeman Motors in Gadsden. He received the lienholder's copy of the executed certificate of title application for the van and the following day he presented the copy to the First State Bank of Albertville in an effort to obtain financing. Based on the title application, the bank made the loan, took a security interest in the van, and issued a "loan disbursement check" made payable to Williamson and Freeman Motors. There was no indication on the face of the check that the loan was secured by any specific collateral.
On Saturday, December 3, Williamson returned to Freeman Motors and purchased a Subaru car. The manager asked Williamson whether he had obtained the check as financing on the van and Williamson responded that he had obtained a loan instead. After an unsuccessful attempt to contact the bank, the manager accepted the check and reimbursed Williamson the difference between the amount of the check and the purchase price of the car. In March or April, First State discovered that it had never received title for the van. Upon contacting Freeman Motors, the bank learned, for the first time, that Williamson had never purchased the van.
Williamson declared bankruptcy and First State filed suit against Williamson, Freeman Motors, and Auto Owners Insurance Company (due to its obligation under a bond) for breach of implied contract and for fraudulent representation. The action against Williamson was continued pending disposition of his bankruptcy proceeding. Thereafter, the case went to trial October 10, 1979. At the close of the evidence, defendants' motion for a directed verdict, separately and severally, was denied and judgment was entered on a jury verdict of $14,662.63 for the plaintiff. Defendants then filed a motion for JNOV or, in the alternative, a new trial or, in the alternative, an amendment or vacation of the judgment. Motion was denied and Freeman Motors and Auto Owners appeal.
Appellants, Freeman Motors and Auto Owners, first contend that First State failed to meet the requisite burden of proof on the contract count. We disagree. While no express contract was alleged by First State, our cases hold that an implied contract may arise from custom and trade usage. In Broyles v.Brown Engineering Co., 275 Ala. 35, 151 So.2d 767 (1963), we stated:
 An implied contract arises where there are circumstances which, according to the ordinary course of dealing and common understanding, show a mutual intent to contract. Such a contract must contain all the elements of an express contract, which rests on consent, and is to every intent and purpose an agreement between the parties, and it cannot be found to exist unless a contract status is shown.
Moreover, we have repeatedly recognized that the only difference between an implied contract and an express contract is the mode of proof. E.g., Gilbert v. Gwin-McCollum FuneralHome, 268 Ala. 372, 106 So.2d 646 (1958).
The record contains testimony, representative of both lender and seller, concerning the customary use and effect of the lienholder's copy of the application for certificate of title in the ordinary course of dealing within the automobile financing business in the surrounding geographical area where the complained of transaction occurred. Pursuant to Code 1975, § 32-8-36, if the automobile is purchased from a dealer, the lienholder's copy contains: (1) a description of the vehicle; (2) the name and signature of the dealer; (3) the name of the lienholder; and (4) the name and signature of the purchaser/owner. When the transaction has been completed, the application is then sent to the State revenue department. *Page 13 
In the instant case, the lienholder's copy, which First State received from Tim Williamson, contained all of the above mentioned information. Furthermore, there was ample evidence from which the jury could infer that the preparation of the application by Freeman Motors and the presentation of the document to First State by Williamson was standard procedure for obtaining bank financing. Even the employee who signed the application on behalf of the dealership testified that he was aware that banks required the completed application prior to extending automobile loans.
As we stated earlier, an implied contract must contain all of the essential elements of an express contract. Contrary to Freeman Motors' and Auto Owners' contentions, we find sufficient evidence to support a finding of breach of implied contract. The elements of a contract are: (1) agreement; (2) consideration; (3) two or more contracting parties; (4) legal object; and (5) capacity.
Viewed in the context of the automobile financing business, the properly executed application prepared by Freeman Motors showing First State to be the first lienholder and Williamson to be the owner of the van was, in effect, an offer by the dealer to complete the delivery of the van and to process the application if the bank would approve a loan to Williamson. When the bank approved the loan by taking a security interest in the described van and issuing its loan disbursement check payable to Williamson and Freeman Motors, it accepted the offer and relied upon the dealer to complete delivery and process the application. The loan money which enabled the purchase constituted valuable consideration passing from First State to Freeman Motors. Finally, the evidence indicates that both the dealer and the bank were aware of the significance of the lienholder's copy of the application for certificate of title in the ordinary course of the automobile financing business.
Next, Freeman Motors and Auto Owners contend that First State failed to prove fraudulent representation pursuant to Code 1975, §§ 6-5-101 and 6-5-103. Again, we disagree. While we fail to find any evidence to support a finding of willful or intentional misrepresentation, § 6-5-101 provides a cause of action for misrepresentations of material fact made "by mistake and innocently" where such representations are acted on by the opposite party. In the case of Cartwright v. Braly, 218 Ala. 49,117 So. 477 (1928), this Court, in interpreting Code 1923, § 8049 (Code 1975, § 6-5-101), stated: "Under section 8049 the misrepresentation must be of material fact, made to be relied upon as an inducement, and must be relied upon to the injury of the other party. In such case an intent to deceive is not essential."
The lienholder's copy which was presented to First State represented that Williamson was the owner of the described van and that First State was the first lienholder. First State acted upon the information in the document in making the loan. Accordingly, the facts are sufficient to support the jury's finding.
Finally, Freeman Motors and Auto Owners contend that the evidence does not support an award of punitive damages under the fraudulent representation count. We agree. In Winn-DixieMontgomery, Inc. v. Henderson, 353 So.2d 1380 (Ala. 1977), we stated:
 [A]n innocent misrepresentation will not support an award of punitive damages. An award of punitive damages in an action for fraud will be upheld only if there is evidence from which the jury can conclude that the fraud was malicious, oppressive, or gross, and the representations were made with knowledge of their falsity.
It is evident that the jury awarded punitive damages for the fraud count. There is, however, no evidence to support a finding of any intentional fraud, malicious or otherwise.
The award of $4,662.63 compensatory damages for breach of contract is due to be affirmed. The award of $10,000.00 punitive damages for fraudulent representation is due to be reversed. *Page 14 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs specially.