**Cecil & Willie Mae AUTREY, Plaintiffs,**

v.

**UNITED COMPANIES LENDING CORPORATION, et al., Defendants.**

**Civ. No. 94 0430–AH–M.**

United States District Court, S.D. Alabama, Southern Division.

Jan. 3, 1995.

Royce A. Ray, III, George W. Finkbohner, III, and John L. Lawler, Mobile, AL, for plaintiffs.

John N. Leach, Jr., Mobile, AL, M. Christian King, and Kim A. Craddock, Birmingham, AL, for defendants.

## ORDER

HOWARD, District Judge.

This cause is before the Court on Plaintiffs' Motion to Remand (Doc. 5).[1] For the reasons that follow, Plaintiffs' Motion to Remand is **GRANTED**.

### I. Factual Background

Plaintiffs originally filed their class action complaint in the Circuit Court of Mobile County, Alabama. *See* Notice of Removal (Doc. 1) (attaching the Amended and Restated Complaint (the "Complaint")). The claims arise out of a September 24, 1992 consumer home mortgage transaction between Defendant United Companies Lending Corporation ("UCLC") and Plaintiffs. Plaintiffs allege that the total nonrefundable prepaid finance charges (or "points") charged and collected by Defendants exceeded 5% of the loan's original principal balance. *See* Complaint at ¶ 14. Plaintiffs' also allege that Defendant Rose Gibson ("Gibson") acted as UCLC's agent and employee. *See id.* at ¶ 8. Plaintiffs are Alabama residents, UCLC is a Louisiana corporation,[2] and Gibson is an Alabama resident.

The Complaint alleges violation of Ala. Code § 5–19–4(g) (Supp.1994) (Alabama's "Mini Code") as well as various Alabama state law causes of action for fraud and wantonness. Defendants argue that removal to this Court is properly grounded on two factors. First, that the Depository Institutions Deregulation Monetary Control Act ("DIDMCA"), 12 U.S.C. § 1735f–7a (1988), pre-empts Alabama's Mini Code. Second, they contend that Gibson was fraudulently joined in this action in order to defeat diversity jurisdiction. *See* Notice of Removal.

### II. Plaintiff's Motion to Remand

Federal courts have original jurisdiction over civil actions that arise under the laws of the United States, *see* 28 U.S.C. § 1331 ("federal question jurisdiction"), as well as over civil actions between citizens of different states in which the amount in controversy exceeds $50,000. *See* 28 U.S.C. § 1332(a)(1) ("diversity jurisdiction").

#### A. Federal Question Jurisdiction

UCLC argues that federal question jurisdiction exists because Plaintiffs gave UCLC a first lien on their residential property to secure a "federally related" loan. As such, UCLC contends, such transaction falls under § 501 of DIDMCA,[3] which completely pre-empts[4] the Mini Code.[5]

---

1. The parties were allowed until September 15, 1994 to conduct jurisdictional discovery and to supplement their positions with respect to this issue. *See* Plaintiffs' Supplemental Submission and Evidence in Support of Plaintiffs' Motion to Remand (Doc. 25). Thereafter, the Court permitted Defendant United Companies Lending Corporation to submit a reply brief by October 11, 1994. *See* Order dated September 30, 1994 (Doc. 30).

2. UCLC is incorporated under the laws of Louisiana, and Louisiana serves as UCLC's principal place of business. *See* Notice of Removal.

3. Section 501(a)(1) reads:
   The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is
   (A) secured by a first lien on residential real property ...;
   (B) made after March 31, 1980;
   (C) described in section 527(b) of the National Housing Act (12 U.S.C. § 1735f–5(b)) ....

12 U.S.C. § 1735f–7a(a)(1).

4. Under the well-pleaded complaint rule, federal jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). An exception exists where a federal law completely pre-empts the area of the state law claim asserted in a complaint. *See id.* at 393, 107 S.Ct. at 2430.

5. Section 5–19–4(g) of the Alabama Mini Code reads:
   [A] creditor may, pursuant to contract, in a consumer loan or consumer credit sale secured by an interest in real property, charge and collect points in an amount not to exceed five percent of the original principal balance in the case of a closed-end loan or credit sale, or five percent of the total line of credit in the case of an open-end credit plan. Points may be paid in cash at the time of the loan or credit sale, or may be deducted from the proceeds and included in the original principle balance. Points shall be in addition to all other charges and are fully earned on the date of the loan or credit sale and may be excluded from the fi-

As a threshold matter, the parties dispute whether § 501 even applies.[6] The loan at issue appears to satisfy the first two requirements of § 501 because it was secured by a first lien on residential real property and was made after March 30, 1980. *See* 12 U.S.C. § 1735f-7a(1)(A)–(B). But the parties disagree over whether the loan is "federally related." For purposes of deciding the complete pre-emption issue, the Court may assume, without deciding, that § 501 applies. *See Hardy v. Equisouth Fin. Servs.,* No. CV–93–A–1149–N, at 4 n. 3 (M.D.Ala. Nov. 23, 1993). Mere application of § 501, however, is not dispositive because DIDMCA provides two provisions that allow a state to override federal pre-emption.

The first provision, the "(b)(2) override exception," requires that a state must adopt an overriding law on or after April 1, 1980 and before April 1, 1983.[7] It also requires that such law "state[ ] explicitly and by its terms that such State does not want the provisions of subsection (a)(1) ... to apply...." 12 U.S.C. § 1735f–7a(b)(2). As Alabama adopted § 5–19–4(g) after April 1, 1983, *see Smith v. First Family Fin. Servs.,* 626 So.2d 1266, 1270 (Ala.1993), and since the statute does not explicitly state that it does not want the § 501 pre-emption to apply, § 5–19–4(g) cannot qualify for the (b)(2) override exception.

The second provision, the "(b)(4) override exception," is limited only to a state law that "plac[es] limitations on discount points or such other charges," and it only requires the adoption of such law any time after March 31, 1980.[8] Unlike the (b)(2) override exception, the (b)(4) override exception contains no explicitness requirement. As Alabama adopted § 5–19–4(g) after March 31, 1980, *see Smith,* 626 So.2d at 1270, and this statute concerns the placing of limitations on discount points, it qualifies for this (b)(4) override exception.

Thus the Court need not decide whether § 501 actually pre-empts § 5–19–4; that issue can be decided by the state court in the event Defendants raise pre-emption as an affirmative defense.

> [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar Inc.,* 482 U.S. at 393, 107 S.Ct. at 2430. Because § 501 does not completely pre-empt Plaintiffs' Mini Code claims, which this Court so finds since § 5–19–4(g) qualifies under DIDMCA's (b)(4) override exception, remand is appropriate.[9]

---

nance charge for the purpose of computing the finance charge refund.

Ala.Code § 5–19–4(g).

**6.** The parties also dispute whether DIDMCA provides a private right of action. *Compare Alabama Fed. Sav. & Loan Ass'n v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 680 F.2d 1384, 1385–86 (11th Cir.1982) (per curiam) *with Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067 (11th Cir.1984), *aff'd en banc,* 764 F.2d 1400 (11th Cir.1985), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 1993, 90 L.Ed.2d 673 (1986). The Court need not resolve this issue, however, because Plaintiffs have not brought a private action under DIDMCA. The issue, instead, remains confined to whether DIDMCA completely pre-empts the Mini Code claim that Plaintiffs did bring.

**7.** Section 501(b)(2), the "(b)(2) override," reads: [T]he provisions of subsection (a)(1) of this section shall not apply to any loan, mortgage, credit sale, or advance made in any State after the date (on or after April 1, 1980, and before April 1, 1983) on which such State adopts a law or certifies that the voters of such State have voted in favor of any provision, constitutional or otherwise, which states explicitly and by its terms that such State does not want the provisions of subsection (a)(1) of this section to apply with respect to loans, mortgages, credit sales, and advances made in such State.

12 U.S.C. § 1735f–7a(b)(2).

**8.** Section 501(b)(4) provides:

At any time after March 31, 1980, any State may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in subsection (a)(1) of this section.

12 U.S.C. § 1735f–7a(b)(4).

**9.** The Court notes that this conclusion is identical to that reached by Judge Albritton in *Hardy v. Equisouth Fin. Servs.,* No. CV–93–A–1149–N (M.D.Ala. Nov. 23, 1993). UCLC argues that Judge Albritton erred in not finding that the (b)(4) override exception is precluded by the language of § 501(b)(1), which UCLC claims limits override to the (b)(2) override exception. *See* 12

## B. Diversity Jurisdiction

■ Defendants argue that complete diversity exists because Gibson was fraudulently joined as a party.[10] *See* 28 U.S.C. § 1332(a)(1). As the removing parties, Defendants bear the burden of proving fraudulent joinder. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

The test for determining whether or not a defendant has been fraudulently joined is twofold: (1) look to see whether there is no possibility the plaintiff can establish any cause of action against the resident defendant; and (2) look to see whether plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court. These determinations should be made based upon the plaintiff's pleadings at the time of removal. In addressing the issue of fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.

*Id.* (citations omitted). As UCLC and Gibson "have not alleged fraud in the pleading of jurisdictional facts[,] . . . the sole issue before this Court is whether plaintiffs have stated a basis for recovery against" Gibson under Alabama law. *Monroe v. Consolidated Freightways, Inc.*, 654 F.Supp. 661, 663 (E.D.Mo. 1987). If a possibility exists that a state court would find that Plaintiffs' complaint states a cause of action against Gibson, this Court must find that joinder was proper and remand this case. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983).

■ The Court finds that there is a possibility that a state court would find that Plaintiffs' complaint states a cause of action for fraud against Gibson. Plaintiffs allege three fraud counts in their complaint: fraudulent misrepresentation under Ala.Code § 6–5–101,[11] fraudulent suppression under Ala-Code § 6–5–102,[12] and fraudulent deceit under Ala.Code § 6–5–103.[13] To prove fraud under Alabama law, "the plaintiff must show the following: (1) that the defendant made a false representation to the plaintiff; (2) that the representation concerned a material fact; (3) that the plaintiff relied on the representation; and (4) that the plaintiff incurred damage as a proximate result of the reliance." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So.2d 180, 182

U.S.C. § 1735f–7a(b)(1). Section 1735f–7a(b)(1) states "Except as provided in paragraphs (2) and (3), the provisions of [§ 1735f–7a(a)(1)] shall apply to any loan, mortgage, credit sale, or advance made in any State on or after April 1, 1980."

Section (b)(1)'s failure to mention the (b)(4) override exception does not mean that the (b)(4) exception should not be given effect. Section (b)(1) addresses all provisions of § 501(a)(1), as does the (b)(2) override exception. Section (b)(4), however, only addresses state laws that limit discount points. Thus it serves an entirely different purpose from the (b)(2) override exception. *See, e.g.*, 12 C.F.R. § 590.3(b) (1993) (employing identical construction of the federal statute). " 'Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.' " *Ardestani v. U.S. Dep't of Justice*, 904 F.2d 1505, 1513 (11th Cir.1990) (quoting *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974)), *aff'd*, 502 U.S. 129, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). Therefore, Judge Albritton's reasoning remains sound and UCLC's arguments to the contrary are unavailing.

10. The Complaint also lists under the fictitious names of "A" through "P" sixteen (16) additional defendants who are certain persons, firms, corporations, partnerships, or other legal entities not yet known. But for purposes of removal pursuant to diversity jurisdiction, the citizenship of defendants sued under ficitious names are disregarded. *See* 28 U.S.C. § 1441(a).

11. The Complaint alleges that "Defendants falsely represented to the Plaintiffs that the Defendants were exempt from" the Alabama Mini Code. *See* Complaint at ¶ 28.

12. The Complaint alleges that "Defendants fraudulently suppressed from the Plaintiffs that the Defendants had a legal obligation not to charge pre-paid finance charges or 'points' in an amount greater than 5% of the original principal balance" and that "Defendants fraudulently suppressed the fact that the Defendants are not exempt from compliance with" the Alabama Mini Code. *See* Complaint at ¶ 32.

13. The Complaint alleges that the "false misrepresentations and suppressions of material facts [complained of] were made willfully by the Defendants with knowledge that the representations were false" or that, alternatively, "Defendants fraudulently or recklessly represented the aforesaid facts as true with the intent to deceive." *See* Complaint at ¶ 35.

(Ala.1992). Fraudulent misrepresentation may be found even "if made by mistake and innocently and .acted on by the opposite party...." Ala.Code § 6–5–101; *Freeman v. First State Bank*, 401 So.2d 11, 13 (Ala. 1981).[14]

In an affidavit submitted to this Court, Gibson avers that (1) as a clerical worker,[15] she had merely clerical involvement in connection with the closing of Plaintiffs' mortgage loan, (2) she made no decision to approve or to deny any loan, and she did not decide what loan terms would be given to any customer, (3) due to her clerical statute, she did not make any representations to Plaintiffs concerning the legality or appropriateness of any charge made by UCLC or regarding UCLC's status as a National Housing Act lender,[16] and (4) as an individual employee and not a "consumer lender," she is not liable under the Alabama Mini Code. *See* Motion to Dismiss (Doc. 3) (attaching Affidavit of Rose Gibson).

But Plaintiff Cecil Autrey disputes Gibson's description of her role. He avers that Gibson "did not present herself to me and my wife as just a clerical person" but instead "acted like the representative of United Companies Lending Corporation for the purpose of making this loan, including the presentation of all the documentation and obtaining my signature." *See* Affidavit of Cecil Autrey (Doc. 6). Gibson's name appears as the preparer on the mortgage Autrey granted to UCLC, and she "may have been" the person who acted as the closing agent. *See id.* No other UCLC employee is identified in the loan documents. *See id.* (Exhibit A).

■ Defendants argue that fraudulent misrepresentation or suppression cannot be proven because no confidential relationship existed between Plaintiffs and Gibson. But given that the extent and nature of Gibson's involvement is disputed, as well as the fact that Gibson's name is the only one to appear on the loan documents, Defendants have not persuaded the Court that the possibility does not exist of a state court finding that an obligation to communicate a material fact arose from either "confidential relations or [the] 'particular circumstances' " of this case. *Trio Broadcasters, Inc. v. Ward*, 495 So.2d 621, 623 (Ala.1986). Further, under Alabama law, fraudulent misrepresentation does not require the existence of such relationship. *See* Ala.Code § 6–5–101; *Freeman*, 401 So.2d at 13.

Therefore, Defendants have not persuaded the Court that a possibility does not exist that a state court would find that Plaintiffs' complaint states a cause of action for fraud against Gibson. *See Coker*, 709 F.2d at 1440–41. Accordingly, this case is due to be remanded.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED,** and the Court **DIRECTS** the Clerk of the Court to **REMAND** this cause back to the Circuit Court of Mobile County, Alabama.

---

**14.** Plaintiffs also argue that, under Alabama law, Gibson is deemed to have notice of the fraud that her employer was perpetrating. *Cf.* Ala.Code § 8–2–8 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other."); *Shelter Modular Corp. v. Cardinal Enters.*, 347 So.2d 1334, 1338 (Ala.1977) ("This statute [Ala.Code § 8–2–8] does no more than restate the common law rule imputing to both principal and agent 'whatever either has notice of.' ").

**15.** Gibson describes her job at UCLC as a loan processor, not as a loan officer or a management level employee. *See* Motion to Dismiss (Affidavit of Rose Gibson) (the "Gibson Affidavit"). Her job was limited to "tak[ing] the information concerning a loan which was provided by the loan officer or home office underwriters and typ[ing] the loan documents and prepar[ing] the loan closing documents on a computer." *Id.*

**16.** Gibson states that such representations, "if any, would be handled by the loan officer or a management level employee." *Id.* at ¶ 3.