Martha **HUNTER,** et al., Plaintiffs,

v.

**RICH'S DEPARTMENT STORES,** Dixie **Minatra and FDS National Bank, Defendants.**

**No. CV 95–PT–1548–S.**

United States District Court, N.D. Alabama, Southern Division.

Aug. 31, 1995.

Will Hill Tankersley, Jr., LeeAnn M. Pounds, Balch & Bingham, Birmingham, AL, James A. Huizinga, John M. Casanova, Morrison & Foerester, Washington, DC, for Defendants.

Charles M. Thompson, Thompson & Carson, Birmingham, AL, for Plaintiffs.

### MEMORANDUM OPINION

PROPST, District Judge.

This cause comes to be heard on defendant Minatra's Motion to Dismiss and plaintiff's Motion to Remand. The court has considered the parties' original briefs and responses to the court's orders of June 19 and July 11, 1995.

### I. FACTUAL BACKGROUND

The lawsuit has been brought by Martha Hunter on behalf of a class ("plaintiff") against Rich's Department Stores, alleged to be a Georgia Corporation ("Rich's"), Dixie Minatra, alleged to be a manager of Rich's Birmingham stores, a divisional vice president and an Alabama resident ("Minatra"), and FDS National Bank, alleged to be a national banking organization incorporated in the state of Ohio (the "Bank") (and collectively, "defendants"). Plaintiff contends that defendants have in the past charged and continue to charge late fees in violation of Alabama law; specifically, that defendants' $15 credit card late fee violates Alabama code section 5–19–4 (the "mini-code") in several distinct ways.[1] First, the late fee is charged prior to the required ten-day default period. Second, the fee is charged without regard to the amount of the cardholder's scheduled payment due that month or the period of time. Finally, the late fee is subjected to a 21% annual interest rate. (Pla.Compl. at ¶ 4).

Defendants have removed the case and have moved to dismiss Minatra from the suit under a fraudulent joinder theory. Plaintiff has responded with a motion to remand.

---

1. Section 5–19–4 states in pertinent part:
   (a) When a scheduled payment is in default 10 days or more, the creditor may charge and collect a late charge not exceeding five percent of the amount of such scheduled payment in default or of $.50 on each such scheduled payment in default, whichever is greater, not to exceed $100.00. Such late charges may be collected only once on any scheduled payment, regardless of the period during which it remains in default.
   *Ala. Code* § 5–19–4 (1975).

## II.  CONTENTIONS OF THE PARTIES

### 1.  Defendants' Contentions

Defendants have raised two primary issues. First, they contend that the joinder of Minatra is fraudulent and that the complaint against her should be dismissed and that, absent Minatra, diversity jurisdiction is satisfied and thus the case is properly in federal court. Second, in the alternative, even if Minatra were properly joined, the court has federal question jurisdiction to hear the case under the "complete preemption doctrine."

#### a.  *Federal question jurisdiction.*

Defendants' federal question contentions all rely on one chain of logic: (1) under the controlling federal law, the National Bank Act of 1864, 12 U.S.C. § 21 *et seq.* (the "National Bank Act"), the term "interest" includes within its definition nonpercentage late fees; (2) the National Bank Act governs suits against national banks for excessive "interest," and thus excessive credit card late fees as well; and (3) the National Bank Act provides the exclusive remedy for such violations.

##### (1)  *Under federal law, the definition of "interest" includes credit card late fees*

Defendants state that "the extensive case law authority upholding the removal of late fee challenges reasons that the exclusive federal remedy in Section 86 [of the National Bank Act] applies because late fees are 'interest' for purposes of Section 85 [of the National Bank Act]. There is an overwhelming number of state and federal courts which have ruled that Section 85 applies to a variety of lending charges on credit card accounts, including the late fees at issue in this case." [2] (Def.Opp. at p. 8). In addition, defendants point out that in the context of an analogous statute, Section 521 of the Deposi-

tory Institution Deregulation and Monetary Control Act of 1980 ("DIDA"), Pub.L. No. 96–221, 94 Stat. 132 (1980), an Alabama circuit court has ruled that late fees are covered.[3] DIDA, in language identical to that of National Bank Act section 85, provides federally insured state banks with the same federal interest authority that national banks enjoy under section 85, and defendants contend that "numerous courts have held that Section 521 applies to the same interest charges as Section 85, especially because Congress intended Section 521 to provide state banks with the same powers that national banks have under Section 85." (Def. Opp at p. 9, citing *Greenwood Trust v. Massachusetts,* 971 F.2d 818, 827 (1st Cir.1992)). Consequently, defendants argue that federal law should apply to late fees in the context of national banks, particularly in light of the fact that "an Alabama court has held that an out-of-state bank is not subject to Alabama limits on late fees as a result of a federal statute that is identical in all relevant respects to Section 85." (Def.Opp. at p. 9). In a footnote, however, defendants admit that Judge Nelson, prior to the state court decision in *Syx,* held that a claim under DIDA section 521 was not removable under the complete preemption doctrine.[4] Defendants attempt to distinguish Judge Nelson's opinion on the grounds that he based his decision on DIDA section 501, not section 521. Indeed, defendants cite two cases that reject any relevant connection between the legislative history behind section 501 and section 521.[5] Finally, defendants state that "the legislative history of DIDA obviously has no relevance to Section 85, which was adopted almost 100 years earlier and is the statute at issue in this case." (Def.Opp. at p. 9).

Defendants cite additional cases applying National Bank Act section 85 to charges

---

**2.** Defendants list among these courts the First Circuit, the federal district court for the Western District of Pennsylvania, the federal district court for Minnesota, the California Court of Appeal, the Colorado Court of Appeals and the appellate division of the New Jersey Superior Court.

**3.** *See Syx v. Greenwood Trust Co.,* No. 91–8824–MC (Ala.Cir.Ct. May 2, 1994).

**4.** *See Syx v. Greenwood Trust Co.,* CV–91–N–2855–S (N.D.Ala. Mar. 2, 1992).

**5.** *See Greenwood Trust,* 971 F.2d at 830; *Hill v. Chemical Bank,* 799 F.Supp. 948, 954 (D.Minn. 1992).

other than straight interest charges.[6] Further, they state that the Office of the Comptroller of the Currency ("OCC") has interpreted section 85 as applying to late fees on credit cards issued by national banks,[7] and that the Supreme Court has recently reiterated that the OCC's interpretation of the National Bank Act should be given substantial deference. The Court, in deferring to the OCC's definition of the term "insurance" under the National Bank Act, stated that as long as the agency's interpretation "is reasonable in light of the legislature's revealed design, we give the [agency's] judgment 'controlling weight.'" *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.,* 513 U.S. 251, ——, 115 S.Ct. 810, 813–14, 130 L.Ed.2d 740 (1995). Defendants argue that not only is the OCC's definition of the term "interest" reasonable, it is also necessary to carry out the design of the National Bank Act, because if state law authorized competing lenders to charge late fees that national banks would not be authorized to charge under section 85, they would be put at precisely the type of competitive disadvantage that section 85 and the most favored lender doctrine were established to avoid.

### (2) *Federal law applies*

Defendants argue that the activities of the Bank are governed by the provisions of the National Bank Act and that the OCC has exclusive regulatory authority over national banks such that state supervision is almost totally prohibited. (Def.Opp. at p. 2, citing 12 U.S.C. § 484). Defendants state that under *Marquette Nat'l Bank v. First of Omaha Serv. Corp.,* 439 U.S. 299, 308, 99 S.Ct. 540, 545, 58 L.Ed.2d 534 (1978), the permissible amount of "interest" the Bank may charge is a matter of federal law governed by 12 U.S.C. § 85. Section 85 authorizes a national bank to charge interest allowed by the laws of the state in which the bank is located, incorporating those laws in order to determine what amount of interest the bank permissibly may charge. In addition, defendants argue that the Supreme Court has developed two doctrines that operate within the scope of section 85. First, the "Most Favored Letter Doctrine," authorizes national banks to charge the maximum interest rate allowed by state law for any lender, not just national banks. *Tiffany v. National Bank,* 85 U.S. (18 Wall.) 409, 21 L.Ed. 862 (1873). Second, the "Exportation Doctrine" authorizes national banks to charge interest allowed by its home state's laws on interstate loans to borrowers in other states. *Marquette,* 439 U.S. at 316–17, 99 S.Ct. at 549–50.

### (3) *Federal law provides the exclusive remedy*

Defendants state, "With respect to federal question jurisdiction, federal law provides that the exclusive penalty for a national bank which charges interest in excess of the amount permitted under Section 85 is governed by another provision of the National Bank Act—12 U.S.C. § 86 ('Section 86'). *Farmers' & Mechanics' Nat'l Bank v. Dearing,* 91 U.S. 29, 35, 23 L.Ed. 196 (1875) ('The power to supplement [Section 86] by State legislation is conferred neither expressly nor by implication.') Since the periodic percentage charges and late fees challenged by plaintiff are interest charges governed by Section 85, federal law dictates that the claims asserted against the Bank necessarily arise under federal law." (Def.Opp. at p. 4)

In *M. Nahas v. First Nat'l Bank of Hot Springs,* 930 F.2d 608 (8th Cir.1991), the court stated the following:

Section 86 is an exclusive federal remedy, created by Congress over 100 years ago to prevent the application of overly-punitive

---

**6.** *See Citizens' Nat'l Bank v. Donnell,* 195 U.S. 369, 373–74, 25 S.Ct. 49, 49–50, 49 L.Ed. 238 (1904) (charges for failure to pay an account when due); *Northway Lanes v. Hackley Union Nat'l Bank & Trust Co.,* 464 F.2d 855 (6th Cir. 1972) (closing costs charged on real estate loans); *Fisher v. First Nat'l Bank,* 548 F.2d 255, 258–59 (8th Cir.1977) (cash advance fees on credit cards); *Cades v. H & R Block, Inc.,* 43 F.3d 869 (4th Cir.1994) (flat charges for tax refund anticipation loans); *Cronkleton v. Hall,* 66 F.2d 384, 387–88 (8th Cir.1933) (bonuses and commissions paid to a lender); *Panos v. Smith,* 116 F.2d 445, 446 (6th Cir.1940) (charges for mortgage taxes and recording fees); *American Timber & Trading Co. v. First Nat'l Bank,* 690 F.2d 781, 787 (9th Cir.1982) (compensating balance requirements).

**7.** *See* Letter from Julie Williams, OCC Chief Counsel (Feb. 17, 1995).

state law usury penalties against national banks.... [W]hether or not plaintiff artfully attempted to couch its complaint wholly in state law terms it was necessarily federal in nature and properly removable. *Id.* at 612. *See also Nelson v. Citibank,* 794 F.Supp. 312 (D.Minn.1992) (relying on *Nahas,* a claim against a national bank for assessing periodic percentage charges on late fees added to credit card balances was removable on federal question grounds even though plaintiff framed complaint solely on the basis of state law claims); *Beeman v. MBank Houston, N.A.,* 691 F.Supp. 1027 (S.D.Tex.1988) (usury claim against bank properly removable).

Defendants note that plaintiff has conceded that section 85 and the exportation doctrine apply to the Bank's periodic percentage charges, and thus under the complete preemption doctrine there is clearly federal question jurisdiction as to that issue. (Def.Opp. at p. 11). Defendants further contend that once it is established that federal law applies and provides the exclusive remedy for excessive interest charges (and thus late fees, according to defendants' argument) federal question jurisdiction exists under the complete preemption doctrine, even though plaintiff alleges only state law claims.

Under normal circumstances, the "well-pleaded complaint" rule directs that federal question jurisdiction can be found only when it is presented on the face of the plaintiff's complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). However, defendants argue that, where Congress has completely preempted a particular area of the law and has provided plaintiffs with an exclusive federal remedy, "any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The complete preemption doctrine then "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. at 1547. *See also Brown v. Connecticut General Life Ins. Co.,* 934 F.2d 1193, 1196 (11th Cir.1991).

Defendants state, "As one court recently remarked, '[t]he vast majority of the courts that have addressed this issue have concluded that the National Bank Act fits within the complete preemption doctrine and thus allows removal of an action even when the complaint is based solely on state law.'" *Watson v. First Union Nat'l Bank of South Carolina,* 837 F.Supp. 146, 148 (D.S.C.1993). Defendants argue that the cases cited by plaintiff for the proposition that a federal question does not exist under the National Bank Act are inapposite. Both *Mazaika v. Bank One, Columbus, N.A.,* 439 Pa.Super. 95, 653 A.2d 640 (1994) and *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537 (D.Colo.1993) considered the term "interest" to be limited to percentage charges. Defendants state:

> The confusion in both *Mazaika* and *Copeland* appears to be attributable to the fact that Section 85 refers to the term "interest rate," and a percentage rate is one of the most common rates used to determine the amount of interest. However, there are many other types of "rates" that can be used to determine the amount of "interest." *See Greenwood Trust,* [971 F.2d] at 824–25. Interest charges covered by Section 85 frequently are calculated, for example, at a flat rate of a specified number of dollars.... Thus *Mazaika* and *Copeland* confuse the issue of what is "interest" with the issue of what "rate" is used to calculate the amount of interest.... Moreover, the Alabama rate for late fees that plaintiff asserts is applicable likewise is a "percentage" rate ... thus even the erroneous reasoning of *Mazaika* and *Copeland* does not even support plaintiff's arguments.

(Def.Opp. at pp. 12–13).

### b. *Diversity jurisdiction*

#### (1) *Fraudulent joinder*

Defendants allege that Minatra was fraudulently joined for the sole purpose of destroying diversity. They set out the standard for fraudulent joinder as follows: (1) there is no possibility that the plaintiff can establish any cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts in order to

bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989); *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1439 (11th Cir.1983).

Defendants rely on the first prong of the fraudulent joinder test. In a nutshell, they argue that late fees are the same as interest, federal law governs the interest that national banks charge, and federal law provides the exclusive remedy for excessive interest charges—a remedy that precludes plaintiff's claim against Minatra. Thus, plaintiff has no colorable claim against Minatra, and she was brought into the suit solely for the purpose of destroying diversity.

As mentioned above, defendants state that plaintiff's exclusive remedy is under section 86. Defendant points to the language of section 86 which states "the person by whom [excessive interest] has been paid, or his legal representatives, may recover back ... twice the amount of interest thus paid from the association *taking or receiving the same.*" 12 U.S.C. § 86 (emphasis added). Defendants contend that this language precludes anybody but the Bank from being liable, and certainly not Minatra, an employee of Rich's. Defendant argues that section 86 imposes liability solely for "taking and receiving" excessive interest, and that it is clear that Minatra did not take or receive interest from plaintiff. Consequently, Minatra was not properly joined.

Defendants also cite several cases in which courts have applied the doctrine of fraudulent joinder in circumstances where plaintiffs had attempted to join employees of a defendant to an action in order to defeat diversity. For instance, in *Haines v. National Union Fire Ins. Co.,* 812 F.Supp. 93, 97 (S.D.Tex. 1993), the court found fraudulent joinder where an employee claim adjuster could not be liable for the denial of a claim by his employer insurance company. Under similar facts, the court in *Ironworks Unlimited v. Purvis,* 798 F.Supp. 1261, 1265 (S.D.Miss. 1992) came to the same conclusion.

Defendants make the final point that if there is any substance to the argument that an employee can be held liable in this context for excessive interest charges, the fact that plaintiff sued an employee of Rich's only, and not an employee of the Bank as well, is evidence that Minatra was sued for the sole purpose of defeating diversity. Defendant argues that the Bank, a more likely candidate for suit, has no employees in Alabama and it is for that reason alone that its employees escaped suit.

#### (2) *Complete diversity*

Once fraudulent joinder has been established, complete diversity is met because it is undisputed that Minatra is the only party destroying diversity.

#### (3) *Amount in controversy*

Defendants state that the $50,000 amount in controversy requirement has not been challenged by plaintiff, and thus, is appropriately conceded. However, defendants go on to describe in detail how the requirement is satisfied. Defendants state, "The amount in controversy is satisfied for named plaintiff by her demand of compensatory damages, punitive damages and attorneys' fees." (Def.Opp. at p. 17). For support, defendants cite *Roberson v. Ammons,* 477 So.2d 957 (Ala.1985), in which there was a $100,000 punitive damage award for violation of the Alabama mini-code. Furthermore, defendants argue that "insofar as *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) and its progeny required that the amount in controversy requirement be met by each of the putative class members, those cases have been overruled by the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 140 Stat. 5089." (Def.Opp. at p. 17). For support, defendants cite *In re Abbott Labs.,* 51 F.3d 524, 529 (5th Cir.1995) which states that under the Judicial Improvements Act of 1990, "a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives."

Defendants argue in the alternative that regardless of the effect of the Judicial Improvements Act of 1990 on *Zahn* and its progeny, "the amount in controversy is met for the putative class because the claims for punitive damages represent a right to recovery that is a common and undivided right of the class." (Def.Opp. at p. 17). They cite

for support *Reeves v. Discover Card Services, Inc.,* CV–94–U–1450–J, 1994 WL 803274 (N.D.Ala. Aug. 4, 1994); *Tapscott v. Lowe's Home Centers, Inc.,* CV–94–PT–2027–S (N.D.Ala. Nov. 1, 1994); *Calloway v. Baker Furniture Co.,* CV–94–PT–2751–S (N.D.Ala. Mar. 6, 1995); and *Arnold v. Ford Motor Co.,* CV–95–PT–0073–M (N.D.Ala. May 2, 1995).

### 2. Plaintiff's Contentions

#### a. *Federal question jurisdiction*

Plaintiff likens this case to a similar case from Colorado involving an out-of-state credit card company charging late fees in violation of Colorado law. Plaintiff explains that in *Copeland v. MBNA America, N.A.,* 820 F.Supp. 537 (D.Colo.1993):

> [A] resident of Colorado had brought a class action ... against a Delaware Corporation, ... the credit card issuer. The Delaware Corporation removed the case to Federal Court, and the plaintiff filed a motion to remand. The District Court ruled that the Complaint was not removable under the "well pleaded complaint rule", nor was the case removable on the "theory of complete preemption" and neither was the case removable on "the theory of diversity jurisdiction".

(Pla.Obj. at p. 2). Plaintiff mimics this analysis in building support for her own case. First, relying on the "well pleaded complaint rule," plaintiff argues that federal question jurisdiction should not exist because the "present cause of action was brought in State Court and alleges no federal cause of action." (Pla.Obj. at p. 2). Second, plaintiff contends that the corollary to the well pleaded complaint rule, the complete preemption doctrine, is inapplicable. Specifically, plaintiff contends that federal law does not apply at all to excessive late fees because late fees are penalties, not interest, and thus the National Bank Act is inapposite. In the alternative, plaintiff contends that even if the National Bank Act applies to this case, complete preemption should not be found because there is no clear manifestation of congressional intent to assign an extraordinary preemptive force to sections 85 and 86 of the National Bank Act, as is required for complete preemption. Finally, plaintiff argues that the court does not have diversity jurisdiction because joinder of Minatra is proper, or, even if it is not proper, the court cannot know that without some discovery, and such questions if unanswered should always be resolved against the party seeking removal.

#### (1) *The well pleaded complaint rule*

Plaintiff argues that under the well pleaded complaint rule, removal on the basis of federal question should be determined only by the plaintiff's complaint. Plaintiff quotes, "Whether the case arises under laws of the United States is determined from plaintiff's complaint, for purposes of federal jurisdiction, unaided by statements alleged in anticipation of defenses that defendants may raise." 28 U.S.C. § 1331; *Copeland,* 820 F.Supp. at 537. As mentioned, because plaintiff alleges only state law issues, federal question jurisdiction should not exist, absent some overriding theory.

#### (2) *Complete preemption*

Plaintiff contends that the only overriding theory offered by defendants is the complete preemption doctrine, which is inapplicable for two reasons. First, federal law does not apply at all to charges of excessive late fees. Plaintiff cites two Pennsylvania cases for support. In *Mazaika v. Bank One, Columbus, N.A.,* 439 Pa.Super. 95, 653 A.2d 640 (1994), the court held that credit card late fees are not "interest" under the federal banking laws and are thus not exportable by national or state chartered banks. Like this case, *Mazaika* involved a bank whose home state defined "interest" to include late fees, but the court determined that the "federal definition" should be used, under which the ordinary and historical meaning of the term did not include any fees levied on a nonpercentage basis. (Pla. Brief in Opp. at p. 5). In addition, in *Irvin v. Citibank, N.A.,* 26 Phila. 388 (1993), the court held that a definition of "interest" broad enough to include late fees could not be used as a basis for exportation of late fees into another state because it would be an unconstitutional delegation of legislative authority by Congress. Plaintiff argues that a similar rule should be applied in this case.

Second, even if federal law does apply, under *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987), complete preemption arises only when the "preemptive force of a statute is so extraordinary that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well pleaded complaint rule." Further, removal based on complete preemption only "exists when ... Congress has clearly manifested an intent to make causes of action ... removable to federal court." *Taylor,* 481 U.S. at 67, 107 S.Ct. at 1548. In addition, plaintiff states that the Supreme Court has found complete preemption in just three settings: (1) *Taylor,* 481 U.S. at 58, 107 S.Ct. at 1543–44 (state contract and tort claims completely preempted by sections 502(a)(1)(B) and 502(f) of the Employee Retirement Income Security Act of 1974); (2) *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) (state property law claim regarding Indian tribal lands completely preempted by federal law); and (3) *Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists & Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (section 301 of the Labor Management Relations Act completely preempted state court injunctions based on the collective bargaining agreement). Because defendants have failed to show either extraordinary preemptive force or a clear manifestation of congressional intent, complete preemption should not lie.

### b. *Diversity jurisdiction*

Plaintiff states that, as the removing parties, defendants bear the burden of proving fraudulent joinder, and that "removal of a case should be narrowly construed and all doubts about propriety of federal jurisdiction are to be resolved against removal." *Donald*

v. *Golden 1 Credit Union,* 839 F.Supp. 1394 (E.D.Cal.1993). In addition, under *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989), the test for determining fraudulent joinder is rather stringent. Plaintiff construes the test as defendants did: (1) the court should look to see whether there is a possibility the plaintiff can establish any cause of action against the resident defendant; and (2) the court should consider whether plaintiff has fraudulently pled jurisdictional facts in order only to bring the resident defendant into state court.

Plaintiff contends that Minatra was not fraudulently joined and even if she doesn't belong in the suit, there is no way to make that determination until some discovery is accomplished. Plaintiff argues that "Ms. Minatra has knowingly implemented, collected and administered the charging of illegal late fees in [Rich's] Alabama-based stores. Were this an insurance case where XYZ Insurance Company was sued for charging illegal premiums, would not the local general agent in charge of implementing, collecting and administering the scheme not be liable for his part?" (Pla. Brief in Opp. at p. 6).[8] In addition, plaintiff states that under *Autrey v. United Companies Lending Corp.,* 872 F.Supp. 925 (S.D.Ala.1995), in addressing the issue of fraudulent joinder of a nondiverse defendant, the district court should resolve all questions of fact and controlling law in favor of the plaintiff, and can consider any submitted affidavits or deposition transcripts or both. Further, in light of *Autrey* and *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440–41 (11th Cir.1983); "the court should remand a case improperly removed based on alleged diversity of parties, where the possibility exists that state court would find that plaintiff's complaint states a cause of action against a non-diverse defendant."[9] (Pla. Brief in Opp.

---

8. This court suggests that the answer would likely be "no."

9. Plaintiff contends that there are many questions that must be asked of Minatra before a conclusive determination of her appropriate role in this case can be made, and thus those unresolved questions, for purposes of defendants' motion to dismiss, should be resolved in plaintiff's favor. She asks:

What authority did she have with the Defendants? What knowledge did she possess regarding the application of late penalties charged by the Defendants? What knowledge does she have regarding the collection of late fees? What part does she play in charging late fees to the putative class's accounts? What responsibility does she have in overseeing local accounting practices as regards the application

at p. 7). However, plaintiff concedes that if "the discovery in this case discloses that Defendant Dixie Minatra has no potential cause of action against her, then it would be encumbant [sic] upon the plaintiff and plaintiff's counsel to remove Defendant Dixie Minatra from the case." (Pla. Brief in Opp. at p. 6).

## III. COURT'S ANALYSIS

### 1. Federal Question Jurisdiction

a. *Does the definition of the term "interest" include credit card late fees?*

This is arguably an unsettled question. The weight of authority, however, leans heavily in favor of the defendants on this issue.

In *NationsBank of North Carolina v. Variable Annuity Life Ins., Co. et al.,* 513 U.S. 251, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995), the Court considered the problem of defining terms under the National Bank Act in the absence of any clear congressional definition in the statute. The Court concluded that in the presence of a statute that is silent or ambiguous as to a particular issue, if an agency charged with administering the statute construes it in a way that is reasonable, that construction is to be given controlling weight. The Court stated, in relevant part:

It is settled that courts should give great weight to any reasonable construction of a regulatory statute adopted by the agency charged with the enforcement of that statute. The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of this principle with respect to his deliberative conclusions as to the meaning of these laws. . . . When we confront an expert administrator's statutory exposition, we inquire first whether the intent of Congress is clear as to the precise question at issue. If so, that is the end of the matter. But, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. If the administrator's

of the late fees to the various customers' accounts?

reading fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the administrator's judgment controlling weight.

*NationsBank,* 513 U.S. at ——, 115 S.Ct. at 813–14 (internal quotation marks and citations omitted).

■ Thus, the test involves three parts: (1) the statute must be silent or ambiguous with respect to the specific issue; (2) the agency whose interpretation is relied upon must be charged with enforcement of the statute; and (3) the agency's construction of the statute must be reasonable in light of the legislature's design. The court finds that all prongs of the *NationsBank* test have been satisfied in this case.

■ First, the statute is silent as to the definition of the term "interest." Without ever giving the term definition, it states:

Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located.

12 U.S.C. § 85. Consequently, prong one of the test is satisfied.

Second, the OCC is indeed charged with enforcement of the banking laws. *See* 12 U.S.C. § 1; *NationsBank,* 513 U.S. at ——, 115 S.Ct. at 813. Thus, the second prong of the test is satisfied as well.

Third, in her letter of February 17, 1995, Julie L. Williams, OCC Chief Counsel, offered a reasonable construction of the statute in satisfaction of prong three of the test. She stated:

It has been clear, since Congress enacted section 85 in 1864, that section 85 is the exclusive law governing "interest" charged by a national bank in connection with lending. Under this statute, the law of the bank's state of location is relevant only because section 85 specifically authorizes a national bank to charge any interest at the rate allowed by the laws of the state where

(Pla.Obj. at p. 5).

the bank is located.... State laws that define the term "interest" for their own purposes may often provide examples of the breadth of the term. But section 85's reach cannot be constricted by narrow state terminology.... By its terms, section 85 is broadly written to apply to all interest charged as compensation for a loan. The National Bank Act was an expansively written statute designed to be an outline for a new national bank system. The Act did not contain a specific definition of the term "interest" and the term "interest" did not have any single narrow definition in the judicially-made law of that time. In general, the term was understood to include all "compensation allowed by law, or fixed by the parties for the use or forbearance of money, or as damages for its detention." *Brown v. Hiatts,* 82 U.S. (15 Wall. 177–87, 185) [21 L.Ed. 128] (1873).... Congress intended for the term "interest" in section 85 to be understood broadly to include any kind of lending charge allowed to state lenders in order to achieve Congress' goal of putting national banks on at least as strong a footing as the most favored lender subject to state control.... Consistent with Congress' broad goals and its use of the inclusive word "interest" in section 85 ... late charges ... are "interest" under the classic definition articulated in *Brown* and similar cases: "compensation ... fixed by the parties, for the use or forbearance of money, or as damages for its detention...." Based on the foregoing, we conclude that the described credit card annual fees and late and overlimit charges constitute "interest" within the meaning of 12 U.S.C. § 85....

■ The weight of federal authority sides with the conclusions of the OCC, as well. Plaintiff has cited only one federal case—and the court can find no other authority other

than that given—for the proposition that the term "interest" does not include late fees in the context of section 85. *Mazaika,* the other case relied on by plaintiff, is a Philadelphia state court case standing in direct contrast with the established position of the Eastern District of Pennsylvania.[10] That being the case, plaintiff can produce only one authority in support of her side of the argument, whereas defendants have produced a list of federal courts, including the First Circuit, the Eastern District of Pennsylvania, the District of South Carolina, the District of Minnesota, in addition to the Alabama circuit court, that support the direct proposition that credit card late fees fall within the definition of "interest" for purposes of the National Bank Act. Further, in addition to authority directly on point, defendants offer case law supporting analogous arguments, adding additional logical force to their contentions. Finally, the OCC has clearly construed the National Bank Act in concert with defendants' contentions, and its construction passes any tests of reasonableness, particularly considering the number of federal courts that have reached similar conclusions about the definition of "interest." The federal authority directly on point, combined with analogous authority and the OCC's construction of the statute leads this court to the conclusion that the term "interest" should be construed to include the credit card late fees at issue here.

b. *Because federal law governs, does the doctrine of complete preemption apply?*

Again, the weight of authority favors the defendants' position. While the OCC specifically declined to voice an opinion about the jurisdictional preemption issues related to section 85, the many courts listed above that defined the term "interest" to include credit

---

**10.** The Eastern District of Pennsylvania has held, under very similar facts:

> Given the expansive definition traditionally accorded the term "interest" under the NBA, and that Plaintiff's Complaints seek recovery for charges related to the extension of credit by national banks, this court finds that sections 85 and 86 of the NBA subsume the interests for which plaintiffs seek vindication under state

> law. Additionally, this court finds that there is a clear indication of Congressional intent to permit removal in cases implicating sections 85 and 86 of the NBA. Accordingly, removal was proper in this case based on federal question jurisdiction.

*Goehl v. Mellon Bank,* 825 F.Supp. 1239, 1242–43 (E.D.Pa.1993).

card late fees also found that section 85 completely preempted state law and thus federal question jurisdiction was appropriate. *See, e.g., Nelson,* 794 F.Supp. at 316 (Congress intended to allow removal by creating "an exclusive federal remedy for usury claims against national banks"); *Goehl,* 825 F.Supp. at 1243 (finding "a clear indication of congressional intent to permit removal in cases implicating sections 85 and 86 of the NBA"); *Watson,* 837 F.Supp. at 149 ("the exclusive remedy provision of section 86 evinces congressional intent that usury cases against national banks are necessarily federal"); *Ament v. PNC National Bank,* 825 F.Supp. 1243, 1250 (W.D.Pa.1992) ("Congress did intend to permit removal."). Again, the only contradictory authority on point is *Copeland,* the Colorado case. In light of the great weight of the authority, complete preemption and thus federal question jurisdiction applies.

### 2. Diversity Jurisdiction

#### a. *Was Minatra fraudulently joined?*

 The National Bank Act applies to excessive credit card late fees and the remedy given by section 86 is exclusive. Under section 86, plaintiff "may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid *from the association taking or receiving the same.*" 12 U.S.C. § 86 (emphasis added). Minatra is not an association, and did not take or receive any interest payments from plaintiff. Indeed, she is simply a manager at Rich's, totally uninvolved in the collection of interest charges. No case suggests that an employee of a bank can be sued under section 86, let alone an employee of a department store offering the credit card of a bank allegedly charging excessive late fees. While the court is highly doubtful that this action can be maintained against Minatra on any theory, the court will not reach any issue as to Minatra except the excessive fee or "inter-

est" claim. As indicated hereinafter, the court will not reach the issue as to whether the claims against Minatra for the alleged "10-day" and "scheduled payment" violations can be maintained. In any event, the action is removable based upon federal question as to the excessive fee or interest claim.

b. *Is the amount in controversy satisfied?*

 For reasons stated in earlier opinions of this court cited herein above, the court concludes that the amount in controversy requirements are satisfied.

### IV. CONCLUSION

The court concludes that it at least has federal question jurisdiction. The motion to remand will be denied.[11]

---

**11.** What is not clear at this point are the following:

  (1) Whether the National Bank Act preempts the claim that the late fee is charged prior to the ten day default period required by Alabama law.

  (2) Whether the claim related to the fee being charged without regard to the amount of the cardholder's scheduled payment due, etc. is preempted by said Act.

  (3) Whether the "fee" or "interest" charged is legal under said Act.