Virginia AMENT, et al., Plaintiffs,

v.

PNC NATIONAL BANK, a national bank, Defendant.

Suzanne CAPLAN, et al., Plaintiffs,

v.

MELLON BANK (DE) N.A., Defendant.

Sara J. SZYDLIK, et al., Plaintiffs,

v.

FIRST OMNI BANK, N.A., Defendant.

Barbara S. THOMPSON, et al., Plaintiffs,

v.

MARYLAND BANK, a national bank, Defendant.

5. See *supra* note 4.

Donald R. SZYDLIK, et al., Plaintiffs,

v.

ASSOCIATES NATIONAL BANK, N.A., Defendant.

David A. THOMPKINS, et al., Plaintiffs,

v.

AMERICAN GENERAL FINANCIAL CENTER, Defendant.

Kathleen A. DEFFNER, et al., Plaintiffs,

v.

CORESTATES BANK OF DELAWARE, N.A., a national bank, and HOUSEHOLD BANK, a federal savings bank, Defendants.

David A. TOMPKINS, et al., Plaintiffs,

v.

The CHASE MANHATTAN BANK (USA), a Delaware-chartered bank, Defendant.

Donald R. SZYDLIK, et al., Plaintiffs,

v.

ASSOCIATES NATIONAL BANK (Delaware), Defendant.

Barbara BARTLAM, et al., Plaintiffs,

v.

BANK OF AMERICA, a state-chartered bank, Defendant.

Civ. A. Nos. 92–244, 92–302, 92–330, 92–346, 92–357, 92–375, 92–349, 92–398, 92–714, 92–1025, 92–1427.

United States District Court, W.D. Pennsylvania.

Dec. 29, 1992.

Michael P. Malakoff, Malakoff, Doyle & Finberg, P.C., Pittsburgh, PA, for representative and class plaintiffs.

Daniel I. Booker, Thomas L. Allen, Troy Rivetti, Reed Smith Shaw & McClay, Pittsburgh, PA, for defendants, Mellon Bank, (DE), N.A. and First Omni Bank, N.A.

Samuel W. Braver, Mark D. Shepard, Buchanan Ingersoll Professional Corp., Pittsburgh, PA, for defendants, PNC Nat. Bank, MBNA American Bank, N.A. and Corestates Bank of Delaware, N.A.

Thomas R. Johnson, Kirkpatrick & Lockhart, Pittsburgh, PA, for defendant, Chase Manhattan Bank (USA).

Alan S. Kaplinsky, Burt M. Rublin, Jeffrey S. Saltz, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, PA, for defendants, Chase Manhattan Bank (USA) and American Gen. Financial Center.

Kevin Lucas, Manion, McDonough & Lucas, Pittsburgh, PA, for defendant, Household Bank.

William M. Wycoff, Thorp Reed & Armstrong, Pittsburgh, PA, and Jack S. Auspitz (of counsel), Morrison & Foerster, New York City, for defendants, Associates Nat. Bank, N.A. and Associates Nat. Bank (Delaware).

Gregory M. Harvey, Morgan Lewis & Bockius, Philadelphia, PA, for defendant, Bank of America NT&SA.

Robert J. Cindrich, Manning J. O'Connor, II, Cindrich & Titus, Pittsburgh, PA, for Greenwood Trust.

## *MEMORANDUM OPINION*

LEWIS, Circuit Judge, Sitting by Designation.

On September 17, 1992, this court heard oral argument on motions to remand pending in a number of cases before it.[1] The cases, which are all substantially similar, allege that national banks have improperly assessed certain late fees and overdraft charges against their credit card holders. All of the complaints purport to set forth class actions.

For purposes of briefing and oral argument, the parties have used the case of *Ament v. PNC National Bank*, C.A. No. 92–244, as illustrative of all of the cases. The court will do likewise. Thus, the *Ament* facts follow, and references are to the *Ament* amended complaint.

## *FACTS*

Plaintiff Virginia Ament holds a VISA card issued by defendant PNC National Bank ("PNC"). The cardmember agreement issued when she obtained her VISA card did not disclose that Pennsylvania law limits annual fees, late payment charges, returned check charges and over-credit limit charges. Such fees and charges are not included in any computation of the annual percentage interest rate which is applied to carryover balances. PNC has assessed, and in some cases Ament has paid, certain of these fees and charges.

Ament claims that by contracting to charge, charging and collecting annual fees, late payment charges, returned check charges and over-credit limit charges, PNC violated the Pennsylvania Goods and Services Installment Sales Act, 69 P.S. §§ 1101 *et seq.* (Counts 1 through 4); the Pennsylvania

Banking Code of 1965, 7 P.S. §§ 101 *et seq.*, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.* (Count 7).

In *Ament,* the plaintiff requests damages (trebled under the Unfair Trade Practices and Consumer Protection Law), interest, attorneys' fees, costs, and an injunction prohibiting PNC from charging the offending fees and charges. This is the one respect in which the *Ament* complaint differs materially from the complaints filed in the other cases; plaintiffs in the other cases do not seek injunctions.

All of the cases before this court were originally filed in state court and then removed to this court. Plaintiffs have moved to remand to state court. Defendants claim that this court has jurisdiction over the cases based upon both diversity of citizenship and the presence of a federal question. This court finds jurisdiction based upon the presence of a federal question.

## *ANALYSIS*

Title 28, United States Code, section 1441, provides in part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court *of which the district courts of the United States have original jurisdiction,* may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (emphasis added).

Thus, "[o]nly state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the

---

**1.** At the time of briefing and oral argument, only the first ten of the eleven cases listed in the caption were pending before this court. Since then, *Bartlam v. Bank of America,* C.A. No. 92– 1427, has been filed and transferred to this judge for disposition along with the cases previously assigned to this judge.

case shall be remanded." 28 U.S.C. § .1447(c).

Removing defendants bear the burden of proving that this court has jurisdiction. *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985), *citing Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed. 334 (1939). The removal statutes are strictly construed, and all doubts are to be resolved in favor of remand. *Steel Valley Authority v. Union Switch & Signal Division,* 809 F.2d 1006, 1010 (3d Cir.1987). At the same time, however, although the court should be wary of any improper basis for invoking federal jurisdiction, it should not erroneously deprive a defendant of the right to a federal forum because a decision to remand may not be reviewed. 28 U.S.C. § 1447(d); *Cheshire v. Coca–Cola Bottling Affiliated, Inc.,* 758 F.Supp. 1098, 1100 (D.S.C.1990); *Crier v. Zimmer, Inc.,* 565 F.Supp. 1000, 1001 (E.D.La.1983), *citing* 14A Wright, Miller & Cooper *Federal Practice and Procedure,* § 3721 pp. 218–19 ("since the remand of a case to a state court is not a reviewable order, the federal court should be cautious about remand") (footnote omitted). *Cf. Rothner v. City of Chicago,* 879 F.2d 1402, 1407 (7th Cir.1989).

There are two means by which a district court may exercise original jurisdiction over a case. The first, of course, is when the case involves "federal question jurisdiction." Title 28, United States Code, section 1331, provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The second, diversity jurisdiction, is present when the case is between citizens of different states and the amount in controversy, exclusive of interest and costs, is more than $50,000. 28 U.S.C. § 1332. Of course, the court need only find one basis for jurisdiction; if there is federal question jurisdiction the case need not meet the requirements for diversity jurisdiction, and *vice versa.*

## I. *Removal Based Upon Federal Question Jurisdiction: Legal Principles*

The first ground defendants advance as a basis for this court's jurisdiction is the presence of a federal question. Under the "well-pleaded complaint rule," a defendant may only remove a case to federal court if the claims contained within the plaintiff's complaint, exclusive of any anticipated defenses, "arise under" federal law. *See Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) ("For better or worse, under the present statutory scheme ..., a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." (Emphasis in original.)); *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) ("A right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

Thus, in the usual case, a defendant may not remove a complaint because federal law may prevent plaintiff from recovering on his or her claim. *See Franchise Tax Board,* 463 U.S. 1, 103 S.Ct. 2841; *Railway Labor Executives Association v. Pittsburgh & Lake Erie Railroad Co.,* 858 F.2d 936, 942 (3d Cir.1988). Similarly, a normal preemption defense—that federal law preempts one or more of plaintiff's claims—will not support removal. *United Jersey Banks v. Parell,* 783 F.2d 360, 367 (3d Cir.1986) ("The fact that [plaintiff's] claim under state law may be defeated because of the preemptive effect of federal banking laws does not mean that such federal laws provide the basis of the cause of action, as in the case of § 301 of the LMRA.").

In cases in which a plaintiff's complaint on its face contains only state law causes of action, removal still may be proper if the case falls within one of two categories: cases in which "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one [of the claims] is 'really' one of federal law." *Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848.

## A. Cases in Which Some Substantial, Disputed Question of Federal Law is a Necessary Element of One of the Well–Pleaded State Claims

Even if a plaintiff's claim arises under state law:

> its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.

*Franchise Tax Board,* 463 U.S. at 13, 103 S.Ct. at 2848. If, however, "federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if [plaintiff] has made out a valid claim for relief under state law," there is no federal jurisdiction. The case cannot be removed to federal court. *Id.*

The United States Court of Appeals for the Third Circuit recently proclaimed further that, even if proof of a violation of federal law is a necessary element of plaintiff's state-law cause of action, the district court will be vested with subject matter jurisdiction over the case only if Congress created a private federal remedy for the violation. *Smith v. Industrial Valley Title Ins. Co.,* 957 F.2d 90 (3d Cir.1992). Following *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the court concluded that "[w]hen Congress has determined there should be no private, federal remedy for violation of a federal statute, that 'is tantamount to a congressional conclusion that the presence of a claimed violation of the statute ... is insufficiently "substantial" to confer federal question jurisdiction.'" *Smith,* 957 F.2d at 93, *quoting, Merrell Dow,* 478 U.S. at 812 n. 10, 106 S.Ct. at 3234 n. 10.

I need not discuss this potential ground for jurisdiction, for defendants do not contend that the court has jurisdiction based upon this principle; rather, I will proceed to the elusive concept of "complete preemption."

## B. Cases in Which at Least One of Plaintiff's Claims is "Really" One of Federal Law

The second method of removal when a plaintiff's claims all bear state-law "labels" applies if the claims are federal in substance.

"[I]t is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2853. In other words, a plaintiff may not use "artful pleading" in order to try to avoid federal court. *See generally Parell,* 783 F.2d at 367–68.

The Supreme Court has indicated that this concept of "complete preemption" applies in a narrow category of cases in which the preemptive force of a statute is so extraordinary that it converts an ordinary state-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. "Once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*

In cases involving claims for ERISA benefits, for example, ERISA completely preempts any state-law cause of action for benefits. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Because Congress has explicitly stated that claims asserted by ERISA participants, beneficiaries and fiduciaries are to be brought in federal court, any plaintiff asserting a state-law claim for benefits in state court will end up in federal court, with his or her claim automatically "restated" as an ERISA claim. Similarly, § 301 of the Labor Management Relations Act completely preempts all cases in which plaintiffs claim rights pursuant to a collective bargaining agreement. *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). *See also Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

On the other hand, however, a plaintiff remains the master of his or her own case. *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2853. *See also Parell,* 783 F.2d at

368 (the "artful pleading doctrine" should be construed narrowly because "'[a]n expansive application of the doctrine could effectively abrogate the rule that a plaintiff is master of his or her complaint"). Thus, in a case in which plaintiffs who had been employed under a collective bargaining agreement filed suit in California state court alleging breach of separate, individual employment agreements which applied to certain portions of their jobs, the defendant could not remove based upon complete preemption under § 301. *Caterpillar,* 482 U.S. 386, 107 S.Ct. 2425. In other words, if a plaintiff who is covered by a collective bargaining agreement expressly seeks vindication of interests independent of those embodied in the agreement, the suit is not completely preempted by § 301 even if it concerns the plaintiff's employment relationship with the defendant. *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 115 (3rd Cir.1990). *See also Franchise Tax Board,* 463 U.S. 1, 103 S.Ct. 2841.

■ The United States Court of Appeals for the Third Circuit has explained that complete preemption exists if: (1) "the statute relied upon by the defendants as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls;" and (2) "there is a clear indication of a Congressional intention to permit removal despite plaintiff's exclusive reliance on state law." *Railway Labor Executives Assoc.,* 858 F.2d at 942. With regard to the first prong of this test, if there is "no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate," the court cannot permit removal by recharacterizing plaintiff's claim as a federal one. *Id.* Similarly, regarding the second prong, "[i]f there is no affirmative indication of the requisite Congressional intent to permit removal, there can be no 'complete preemption.'" *Id.* Even if the defendant's substantive defense is preemption, the court should not address the case if there is no affirmative Congressional intent to permit

removal. In such a case, the preemption defense must be left for the state court to decide on remand. *Id.*

## II. *Federal Question Jurisdiction Exists in These Cases*

■ In the cases before this court, plaintiffs' complaints contain only state-law causes of action. Defendants claim that the cases are completely preempted by the National Bank Act (the "NBA"), which governs the defendants who are national banks.[2] In other words, they contend that plaintiffs, by artful pleading, are attempting to avoid federal law which necessarily governs. Specifically, they argue that section 86 of the NBA vindicates the interest plaintiffs seek to protect and that Congress intended that section 86 be the exclusive remedy against national banks for the charges and fees at issue.

■ Plaintiffs focus on the principle that a plaintiff is the master of his or her complaint and may choose to plead state rather than federal claims as long as there is no complete preemption. As discussed above, even if a federal claim would preempt a plaintiff's state law claims, federal jurisdiction does not exist unless the federal claim gives rise to complete preemption. Plaintiffs, of course, argue that complete preemption is not present.

### A. Vindication of the Interest Plaintiffs Seek to Protect

Section 86 of the NBA provides:

**Usurious interest; penalty for taking; limitations**

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives,

---

**2.** A few of the defendant banks are actually governed by other federal statutes which regulate the banking industry. All have agreed that the court may focus only on the National Bank Act

for purposes of the remand motions, apparently because the outcome would be the same under all the pertinent statutes.

may recover back, in an action in the nature of an action of debt twice the amount of the interest thus paid from the association taking or receiving the same.

12 U.S.C. § 86. Section 85 of the NBA permits national banks to charge interest "on any loan or discount made, or on any notes bills of exchange, or other evidence of debt," at the rate allowed by the laws of the state where the bank is located. 12 U.S.C. § 85.

Neither section 85 nor section 86 of the NBA defines the term "interest." This court need not decide whether the fees and charges at issue in this case actually constitute "interest" for the purposes of these sections; to do so would be to address the merits of the controversy, which this court need not—and should not—do when deciding the jurisdictional issue. *See Railway Labor Executives Assoc.*, 858 F.2d at 942. Rather, the only question to be decided is whether there is any distinction between the interests sought to be vindicated by section 86 of the NBA and by the lawsuits brought by the plaintiffs.

In arguing that these are, in fact, parallel interests, the defendants point out that the Comptroller of the Currency has authorized national banks to engage in credit card programs as an exercise of the lending powers granted to them under the NBA. 12 C.F.R. § 7.7378; 12 U.S.C. § 24 (Seventh) (authority to lend money on personal security). The late fees and other charges about which plaintiffs complain are levied in connection with credit extended to credit card holders. Therefore, in defendants' view, plaintiffs' suits are merely actions by borrowers against national banks to recover allegedly improper loan-related charges. Both interest and these fees and charges are "credit-related charges." Plaintiffs' cases are thus aimed at safeguarding the same interest as would be an action for allegedly excessive interest, which is governed by section 86 of the NBA.

Defendants argue that the Pennsylvania laws relied upon by plaintiffs and section 86 of the NBA both regulate "charges a national bank may impose in connection with the extension and repayment of credit." Therefore, in their view, cases squarely within the purview of the NBA (i.e., those concerning a dispute as to the interest rate charged on credit cards or for a loan) and cases such as plaintiffs' (involving late fees and other special charges) protect the same interest in seeking to prevent national banks from levying excessive credit-related charges.

Defendants correctly note that federal law need not provide the same remedy as state law in order to vindicate the same interest. For example, in the ERISA context, ERISA has been held to preempt claims asserted under state law even when the state law claims would, if proven, entitle a plaintiff to types of damages that are not available under ERISA. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir.1989). Thus, it is immaterial that the Pennsylvania statutes plaintiffs cite authorize treble damages which, of course, would not be available under the NBA.

In response, plaintiffs argue that there is no federal remedy for allegedly excessive or improper annual fees, late charges, return check charges or over-credit limit charges. Indeed, no federal statute explicitly grants plaintiffs a cause of action to recover those assessments. Further, plaintiffs contend section 86 of the NBA does not implicitly provide a cause of action for these assessments because they are not "interest."

In pre-argument briefing, plaintiffs cited two cases in support of their position. *Greenwood Trust Co. v. Massachusetts*, 776 F.Supp. 21 (D.Mass.1991) (appeal pending), and *Perdue v. Crocker National Bank*, 38 Cal.3d 913, 216 Cal.Rptr. 345, 702 P.2d 503 (1985). On August 6, 1992, however, the United States Court of Appeals for the First Circuit overturned the district court's decision in *Greenwood Trust*. *See Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818 (1st Cir.1992). In doing so, the court ruled that under both federal common law and the law of the state of Delaware (where the Greenwood Trust Company was located), late charges are "interest" for purposes of section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (the "DIDA"), which is modeled on section 85 of the NBA. *Id.* at 830–31. It would appear,

then, that *Greenwood Trust* supports the defendants', rather than the plaintiffs', position.

Plaintiffs also relied upon *Perdue*, a state-court case that, though interesting, is ultimately non-binding. In *Perdue*, the California Supreme Court ruled, *inter alia*, that federal law did not preempt state law with respect to charges imposed by a national bank for checks returned for insufficient funds. The issue in *Perdue* was a substantive preemption issue, not a jurisdictional "complete preemption" issue.

The defendants in *Perdue* argued that the court should dismiss the plaintiffs' complaint, which was based upon state law, because various federal laws regulated the field of national bank service charges. *Perdue*, 216 Cal.Rptr. at 358–66, 702 P.2d at 516–24. In contrast to the cases before this court, defendants did not attempt to analogize the charges at issue to interest rates, or to argue that "NSF charges" (as they were called) represented charges incurred as a result of an extension of credit. Instead, they argued that federal law precluded state regulation of bank charges for services performed for depositors. *Id.* at 359, 702 P.2d at 517.

It is not surprising, then, that the court ruled that there was no preemption because Congress had not intended to regulate every aspect of national bank operations. *Id.* at 361, 702 P.2d at 519. In so holding, the court referred to various state statutes and common-law doctrines which have been applied to national banks and found that "when [in the DIDA] Congress expressly preempted state usury laws, it deliberately left in effect other provisions of state law regulating charges in contracts between banks and borrowers." *Id.* at 364, 702 P.2d at 522. The court did not address the issue of whether usury laws seek to vindicate the same interest as that at issue in plaintiffs' cases, however. Thus, *Perdue* is not instructive. Cases cited by plaintiffs in post-argument briefing before this court are similarly unpersuasive. *See, e.g., Stoorman v. Greenwood Trust Co.*, No. 92–C–493, 1992 WL 512162 (D.Colo. September 22, 1992) (discussion of federal question jurisdiction focused solely on the allegations of the complaint).

Thus, in summary, this court concludes that section 86 of the NBA vindicates the same interest that plaintiffs seek to vindicate in the lawsuits before this court.

**B.  Congressional Intent to Permit Removal**

Defendants rely on *M. Nahas & Co., Inc. v. First National Bank of Hot Springs*, 930 F.2d 608 (8th Cir.1991), to argue that Congress intended that section 86 of the NBA would completely preempt state-law claims of the type at issue here. Indeed, *M. Nahas* is particularly instructive. In that case, the United States Court of Appeals for the Eighth Circuit decided that section 86 of the NBA constituted "an exclusive federal remedy, created by Congress over 100 years ago to prevent the application of overly-punitive state law usury penalties against national banks." *M. Nahas*, 930 F.2d at 612.

Of course, *M. Nahas* is to be distinguished factually from the cases before this court. In *M. Nahas*, plaintiff had borrowed money from a national bank and had been charged interest in excess of the rate permitted by his home state. He asserted a state-law usury claim, which the court ruled was completely preempted by section 86, the usury provision applying to national banks. Thus, for *M. Nahas* to be relevant, this court would have to find that the subject matter of the plaintiffs' claims is, as a practical matter, the same as a usury claim, a conclusion I have already reached. *See Tikkanen v. Citibank (South Dakota) N.A.*, 801 F.Supp. 270 (D.Minn.1992); *Hill v. Chemical Bank*, 799 F.Supp. 948 (D.Minn.1992).

Accordingly, I find that *M. Nahas* provides meaningful insight in examining whether Congress intended that national banks not be regulated by the states in this area. Removal to federal court has been deemed improper in other areas "even though the National Bank Act would ultimately control all or part of plaintiff's state law action." The court in *M. Nahas*, however, explicitly ruled that Congress intended that national banks would not be regulated by the states in areas coming within the purview of section 86. *See M. Nahas*, 930 F.2d at 611–12. Its reasoning is

sound. *See* transcript of oral argument, p. 37.

Plaintiffs attack *M. Nahas* as inapposite on its facts. Plaintiffs also engage in an historical analysis to demonstrate that Congress did not intend that the NBA provide an exclusive federal remedy for claims falling within its coverage. Various versions of the NBA have required a minimum amount in controversy for NBA suits to be brought in federal court. *See* plaintiffs' brief in support of motions to remand—federal question, pp. 15–31. Plaintiffs argue that this legislative history, and case law interpreting and describing it, establish that Congress did not intend for federal courts to provide the exclusive forum for NBA suits.

Plaintiffs' arguments are immaterial. Even if Congress believed that NBA suits could be litigated in both state and federal court, this does not address the relevant inquiry at this stage: whether "there is a clear indication of a Congressional intent to permit removal despite plaintiff's exclusive reliance on state law." *Railway Labor Executives Assoc.,* 858 F.2d at 942. *See also Krashna,* 895 F.2d at 114. Whether Congress intended to permit removal is a different question from whether Congress intended that suits involving this section of the NBA could be brought only in federal court.

Thus, despite plaintiffs' historical arguments, it would appear that the cases before this court may be removed as long as Congress intended to permit removal (by, for example, providing an exclusive remedy in a federal statute, thus enabling the invocation of federal jurisdiction). Because I find that Congress did intend to permit removal, I conclude that federal question jurisdiction exists and the cases are properly before this court.

### CONCLUSION

Because this court has determined that it has federal question jurisdiction over the cases before it, the court need not consider whether jurisdiction based upon diversity of citizenship exists. Plaintiffs' motions to remand are denied. An appropriate order will follow. Counsel in each of the above-captioned cases will soon be separately notified as to the judge who will preside from this point forward.