Jody EISENMAN, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., Defendant.

Civ. No. 96–1368 (HAA).

United States District Court, D. New Jersey.

July 23, 1997.

Allyn Z. Lite, Robert J. Berg, Goldstein, Till & Lite, Newark, NJ, Peter S. Linden, Ira M. Press, Kaufman, Malchman, Kirby & Squire, New York City, for Plaintiffs.

Malcolm I. Lewin, Fairfield, NJ, Deborah E. Lans, Donald H. Chase, Morrison, Cohen, Singer & Weinstein, New York City, Robert C. Walters, Russell Yager, Vinson & Elkins, Dallas, TX, for Defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This matter comes before the court on defendant's appeal of Magistrate Judge Chesler's decision to remand the case to state court. For the reasons detailed below, the magistrate judge's ruling shall be **REVERSED**.

### I. Background

Section 4261 of the Internal Revenue Code required airline passengers to pay a ten percent excise tax on all domestic air transportation commenced on or before December 31, 1995, and required the airlines to collect the tax from their customers. *See* 26 U.S.C. §§ 4261, 4291 (1995). President Clinton vetoed a bill in the middle of December that would have extended the excise tax and the tax expired. Thus, no excise tax applied to travel commenced after December 31.[1] Nevertheless, Continental Airlines continued to collect the "excise tax" on tickets for travel on or after January 1, 1996. In December, 1995, the plaintiff, Jody Eisenman, bought a ticket from Continental for a flight in 1996. Continental charged the plaintiff an additional 10% as a "federal excise tax."

In February, Eisenman filed this suit individually and on behalf of those persons who purchased tickets for air transportation from Continental for travel on or after January 1, 1996. Her complaint asserts four state law claims—conversion, unjust enrichment, violation of the New Jersey Consumer Fraud Act, and breach of fiduciary duty—but does not explicitly allege any federal cause of action. Yet, in March, 1996, the defendant removed the matter to federal court on the ground that federal question jurisdiction existed. Subsequently, plaintiff filed a motion to remand the case to state court. This court referred plaintiff's motion to Magistrate Judge Chesler who granted it. In an opinion filed in June, 1996, the court found that it lacked federal question jurisdiction because the complaint is rooted in state law. *See* Magistrate Opinion (filed June 28, 1996) ("June Opinion"). Thereafter, on September 24, 1996, Judge Chesler heard reargument, but still decided to remand the case. *See* Magistrate Opinion (filed October 29, 1996) ("October Opinion").

### II. Jurisdiction to Hear this Appeal

██ Apart from the jurisdictional issues decided by the magistrate judge for which Continental seeks review, the plaintiff argues that this court does not have jurisdiction to even hear this appeal. Plaintiff relies upon the fact that on October 30, 1996, the Clerk of the Court sent two certified copies of both the order of remand and the case file to the state court. According to the plaintiff, the delivery of the case file to the state court divested this court of jurisdiction to hear the appeal.

Certain unique events produced this problem and deserve further attention. When the magistrate judge first decided to remand the case on June 25, 1996, he stayed the order for ten days. *See* Order (June 25, 1996) ("June Order"). On July 3, 1996, the magistrate judge signed a second order extending the stay until the later of either "the disposition of a timely filed motion for reargument to be filed by Continental" or "the disposition of any appeal timely filed by Continental . . . after the disposition of the mo-

1. Congress reimposed the tax in August, 1996, but it expired on December 31, 1996. Congress reimposed the tax again on February 28, 1997.

tion for reargument." *See* Order (July 3, 1996) ("July Order"). The July Order further stated that the extension would terminate "automatically and immediately" in the event that Continental fails to timely file these motions. *See Id.* Basically, Judge Chesler's July Order intended to extend the stay of the June Order until this district court decided any appeals.

Later, Judge Chesler held a hearing for reargument. In October, after the hearing, the judge issued an opinion and filed an order which once again, granted the motion to remand. *See* October Opinion and Order. This order has become the source of confusion and the root of plaintiff's current jurisdictional argument because it did not include any language referencing the original stay. Upon the entering of the October Order, the Clerk of the Court, without considering the July Order extending the stay, sent the case file to the state court. When Continental brought this error to the attention of Judge Chesler, he filed another order "clarifying" the original extension. *See* Order (November 12, 1996) ("November Order"). The November Order states that the July order extending the stay "shall remain in full force and effect." *See Id.* Additionally, the magistrate judge stayed the October order until November 18, 1996. *Id.*

The general rule articulated by the Third Circuit and implicated here is that "a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to the state court." *Trans Penn Wax v. McCandless,* 50 F.3d 217, 225 (3d Cir.1995) (citing *Hunt v. Acromed Corp.,* 961 F.2d 1079, 1081 (3d Cir. 1992)). Adopting such a bright line rule "prevents delay in the trial of remanded cases by avoiding protracted litigation of jurisdictional issues." *Hunt, supra,* at 1082. Three district courts in this circuit have interpreted that rule to mean that once a magistrate grants a motion to remand and the clerk. mails a copy of the order to the state court, the district court's power to hear the appeal is negated. *See DeCastro v. AWACS,*

940 F.Supp. 692, 696 (D.N.J.1996); *Tinkham v. Massachusetts Mutual Life Insurance Co.,* 1996 WL 673527, *3 (D.N.J.1996); *Campbell v. International Business Machines,* 912 F.Supp. 116 (D.N.J.1996). In *DeCastro,* pursuant to FED.R.CIV.P. 72(a),[2] the defendant brought an appeal to the district court of the magistrate's decision to remand the case to state court for lack of federal jurisdiction. *See DeCastro, supra,* at 693. The magistrate judge had entered the order remanding the case on the docket and the Clerk of the Court had already sent a copy to the state court. The district court followed other courts that have found that "[e]ven in cases where a court clerk mailed the certified copy of a magistrate judge's remand order to the state court prior to the district court's review of that order ... the clerk's act terminate[s] ... jurisdiction." *See Id.* at 696 (citing *Campbell, supra; Tinkham, supra;* and *City of Jackson v. Lakeland Lounge,* 147 F.R.D. 122 (S.D.Miss.1993)). According to the court, allowing the rule to be triggered even after the "erroneous sending" of a remand order fulfills the rule's articulated purpose. *See DeCastro, supra,* at 696–97. Use of the term "erroneous" refers to occasions where the Clerk has sent the file even though the losing party could still seek review of the order, through either a motion for reargument or appeal.

■ In the instant case, the plaintiff has invoked *DeCastro* to argue that the transmittal of the magistrate judge's remand order to the state court by the Clerk of the Court, "effectively denied the defendant the right to district court review." *See* Plaintiff's Br. at 5. In the opinion of this court, the plaintiff's position reflects a complete misunderstanding of Third Circuit jurisprudence because it is not consistent with the underlying purpose of the rule. Contrary to the view held by the plaintiff, the Third Circuit's bright line jurisdictional rule is not triggered every time that the Clerk of the Court, however misdirected, delivers a case file to a state court. Rather, the rule is triggered when remand is effectively "completed." *See McCandless, supra,*

---

**2.** Rule 72(a) provides that a party may file with the district court, objections to the magistrate's

decision.

at 225. Because a remand order is not "self-executing," courts use the "physical mailing of the certified copy" as the "key jurisdictional event to divest the district court of jurisdiction." *Id.* Thus, the delivery of the case file is not a substantive event, in itself. Rather, this situation is analogous to one where a cook uses a meat thermometer to determine if the turkey is done. When a certain temperature is reached, the thermometer rings and the cook knows the turkey is done. As with the thermometer, the "mailing" tells the court when the remand is "complete."

Plaintiffs in the instant case have focused solely on the mailing and not whether an effective remand order exists. In all of the lower court cases—*DeCastro, Campbell, Tinkham,* and *City of Jackson*—the district did not have power to hear the appeal because there existed evidence of both an effective remand order and a "physical" mailing. The instant case may be distinguished because while there exists a mailing, there is no effective remand order. As I have noted, in contrast to the other cases cited by the plaintiff, the magistrate judge stayed the remand order until after the disposition of its appeal. For all intents and purposes, because the stay had not expired, the magistrate judge had not yet ordered to remand the case. Here, the Clerk of the Court mailed the file to the state court only because it misunderstood the judge's decree. The thermometer rang, but there was no turkey in the oven. Such an administrative error does not fall within the scope of the kind of "erroneous sending" mentioned by other courts. Therefore, I find that this court does have power to hear the appeal.

### III.  Standard of Review

Before reaching the merits of this appeal, I must address one additional threshold matter: the applicable standard of review. Both parties agree that the court should apply the "clearly erroneous or contrary to law" standard reserved for non-dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A). This view represents the position taken by the "vast majority of the district courts, within this district and elsewhere, that have confronted this issue, have held that a motion to remand is 'non-dispositive,'" *DeCastro v. AWACS,* 940 F.Supp. 692, 695 (D.N.J.1996); *see also Campbell v. International Business Machines,* 912 F.Supp. 116; *but see, Giangola v. Walt Disney World Company,* 753 F.Supp. 148, 152 (D.N.J.1990) (holding that remand orders are dispositive). Notably, even if this were a dispositive motion meriting a "de novo" and plenary review, this case would not be resolved differently. *See* 28 U.S.C. § 636(b)(1). My opinion deals with pure issues of law and under both standards, conclusions of law are reviewed "de novo." *See Albright v. FDIC,* 21 F.3d 419, 1994 WL 109047, *5 (1st Cir.1994).

### IV.  Discussion

Under 28 U.S.C. § 1441, the defendant may remove from state court to federal court, "[a]ny civil action ... of which the district court ... [has] original jurisdiction." However, the jurisprudence of the Supreme Court and the Third Circuit dictates that under the "well pleaded complaint rule," the defendant may not remove a case unless the federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Gully v. First National Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Railway Labor Executives Association v. Pittsburgh and Lake Erie R.R.,* 858 F.2d 936 (3d Cir.1988). Most importantly, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint...." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. The well pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392, 107 S.Ct. at 2429. Nevertheless, the Supreme Court has developed an "independent corollary" to the well pleaded complaint rule which recognizes that "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95

L.Ed.2d 55 (1987); *see Railway, supra,* at 939.

■ This independent corollary, known as "complete preemption" doctrine, acknowledges that there may exist some circumstances where federal law creates a federal remedy for some wrong and displaces all state law remedies regardless of what law the plaintiff relies upon in the complaint. Because the Supreme Court has only invoked the doctrine in "extraordinary" cases, this court must construe it narrowly. *See Caterpillar, supra,* at 393, 107 S.Ct. at 2430.

The instant case raises the question of whether Section 7422 of the Internal Revenue Code ("IRC"), completely preempts plaintiff's state law claims and thereby creates removal jurisdiction in this court[3] even though the plaintiff did not plead any federal claims. Section 7422 of the IRC provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary." 26 U.S.C. § 7422. Thus, this court must determine whether Section 7422 compels the plaintiff to recharacterize the complaint as one rooted in federal law which would permit the defendant to remove the case.

■ Following *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (finding that Section 301 of the Labor Management Relations Act ("LMRA") completely preempted state law claims involving violations of collective bargaining agreement) and *Metropolitan Life, supra,* (holding that Section 502 of ERISA completely preempted state law), the Third Circuit has developed a two part test to determine whether a defendant may invoke the "complete preemption" doctrine. *See Railway, supra.* Under the test articulated by the Third Circuit in *Railway,* the court must first determine that the "statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's claim falls." *Id.*

at 942. Second, the court must find a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* In the instant case, the magistrate judge's opinion expresses skepticism as to whether Continental has satisfied the first prong, but its holding relies upon Continental's failure to satisfy the second prong. The magistrate judge's opinion granted the remand motion, because according to the judge, Continental did not point to any evidence of Congressional intent. In this review, the court will analyze both prongs.

### A. *Railway's First Prong: whether the IRC contains civil enforcement provisions within the scope of plaintiff's claims*

Under the first *Railway* prong—whether the IRC contains civil enforcement provisions within the scope of plaintiff's claims—the court must compare the IRC to the nature of plaintiff's claims. In the instant case, there is no question that the IRC provides the exclusive remedy for the erroneous or illegal collection of taxes. *See Sigmon v. Southwest Airlines Company,* 110 F.3d 1200, 1204 (5th Cir.1997); *Kaucky v. Southwest Airlines,* 109 F.3d 349 (7th Cir.1997); *Lehman v, USAIR,* 930 F.Supp. 912, 916 (S.D.N.Y.1996). However, before comparing the specific enforcement provisions of the IRC and plaintiff's state law claims, this court must consider a necessary predicate to that determination—whether plaintiff has even brought a tax refund case. By "tax refund case," this court means a suit "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." *See* 26 U.S.C. § 7422. If the plaintiff is not asserting a tax refund case as understood by the IRC, this court has no reason to investigate the IRC's enforcement mechanism.

### i. *Is this a tax refund case?*

■ By relying upon the second *Railway* prong, the magistrate judge did not need to consider whether the plaintiff had brought a tax refund case. However, in his discussion of the "artful pleading" doctrine—a doctrine

---

**3.** Defendant's brief posits a number of other justifications for finding federal question jurisdiction, but in light of my ruling, I need not consider them.

which is essentially the same as the "complete preemption doctrine," (*see Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 310 n. 5 (3d Cir.1994), *cert. denied*, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995)),—he found that the plaintiff had not presented a tax refund case. Specifically, the opinion makes two justifications for its finding: first, that "no colorably applicable tax existed" when Continental collected the funds and second, that the complaint was not " 'cast solely in terms of a refund of overcollected taxes,' but as allegations of four state-law causes of action aimed at remedying a perceived wrong caused by defendant's collection of a non-existent tax." June Opinion at 29–30. Plaintiff's appellate brief echoes this refrain. *See* Plaintiff's Br. at 17–18.

Recent caselaw suggests that the position taken by the magistrate judge and the plaintiff is overly rigid and formalistic. To date, in every case involving claims similar to this one,—where the plaintiff has relied upon state law to recover money taken by the Airlines for travel commenced after the excise tax expired in 1996,—the court has characterized the action as a "tax refund" case. *See Kaucky, supra; Sigmon, supra; Lehman; Brennan v. Southwest Airlines,* Civ No. 96–1841. Two Court of Appeals cases—*Kaucky* and *Sigmon*—are particularly illuminating and merit further discussion. In *Kaucky,* the plaintiff sued Southwest Airlines for conversion and breach of contract because the airline had included the ten percent tax on tickets to travel in 1996. Because there did not exist an excise tax on travel in 1996, plaintiff's suit was not, "in a literal sense," one for a tax refund. However, Chief Judge Posner concluded, in deciding whether jurisdiction existed, the "the literal sense is not the right sense." *See Kaucky, supra,* at 351.

There are two parts to *Kaucky* 's rationale. First, the IRC makes the airlines and other private entities agents for the purposes of collecting excise taxes. *See Id.* Therefore, the airlines "correspond to an employee of the Service, and a suit for a refund of the taxes that the firm collected—a suit necessarily based on a claim that the taxes were collected in violation of law—is as much a suit for a refund of federal taxes as if it had been brought against the Commissioner of Internal Revenue." *Id.* at 351.

Second, the airline, Southwest, exercised "colorable authority" to collect taxes even though the tax had expired. *See Id.* at 352. In making this finding, the court found it crucial that the airline "had every reason to believe that a last-minute deal between the President and Congress would result in the extension of the tax beyond its December 31 expiration date." *Id.* Between 1941 when Congress initially imposed the tax and the end of 1995, the tax had never lapsed. *See Id.* On four occasions, Congress had extended the tax immediately before it was due to expire. *See Id.*

Additionally, Chief Judge Posner found it significant that this case could be distinguished from one where a con man poses as an IRS agent and collects and pockets "taxes" from "gullible citizens." While the Seventh Circuit acknowledged that there may be circumstances where an airline might engage in activity more analogous to that of a con man, such a case did not present itself in *Kaucky.* Only in the situation where the airline plays the con man may a plaintiff invoke state law causes of action. In *Kaucky,* however, the court found that the district court had been correct to invoke the "complete preemption" doctrine and federal question jurisdiction.

Similarly, in *Sigmon v. Southwest Airlines,* 110 F.3d 1200, 1203 (5th Cir.1997), the Fifth Circuit adopted the Seventh Circuit's reasoning and rejected the "literal" approach to the IRC. In *Sigmon,* as in *Kaucky,* Southwest charged the plaintiffs an additional ten percent on airline tickets for travel in 1996. Plaintiff's class action suit alleged common law claims for fraud, "for money had and received," and for conversion. *See Id.* at 1202. The *Sigmon* case addressed many of the same issues as *Kaucky,* but it is important to note that the case did not reach the court on a challenge to subject matter jurisdiction, but rather on a summary judgment motion. That is because the *Sigmon* plaintiffs amended their complaint to include an implied cause of action under another provision of the IRC—26 U.S.C. § 6415—thereby

creating federal question jurisdiction without resorting to the "complete preemption issue."

However the defendant did avail itself of the preemptive effect of Section 7422 as a defense to plaintiff's state law which forced the court to decide whether plaintiff's case was essentially one for a tax refund. In response, plaintiffs relied upon the nonexistence of the excise tax and made an argument similar to the "con man" analogy in *Kaucky*. To undermine defendant's claim, the plaintiffs compared their case to one where "a law firm added a 10% surcharge to its fees and called it a 'federal excise tax,' when no such tax existed" or to "an airline [which] dreamed up a 5% 'carry on luggage tax.'" *Id.* at 1203. In those cases, defendants' preemption defense would fail because they could not invoke the protection of Section 7422. Despite the nonexistent "excise tax," the *Sigmon* court found that the airline was "acting as an agent of the government in collecting a tax that it had every expectation would be reenacted." *Id.* at 1204. The Fifth Circuit distinguished plaintiff's hypothetical cases by noting that Southwest had neither imposed a "make believe tax" nor dreamed up a surcharge and pocketed the money for itself. *See Id.* Instead, the airline had collected an excise tax that had been "part of the airline passenger ticket sales landscape for nearly four decades." *Id.* In addition, as in *Kaucky*, the court found it important that the airline had expected the tax to be extended.[4] Thus, the court found that Section 7422 preempted plaintiff's state law claims.

While the procedural posture of *Sigmon* is different from the instant case, its analysis of what constitutes a tax refund case and its adoption of *Kaucky*'s reasoning is extremely relevant. Here, Eisenman seeks a refund of the 10% "federal excise tax" charged by Continental on tickets for travel in 1996. *See* Complaint ¶¶ 2, 3, 12, 21. As in *Kaucky* and *Sigmon*, this case is not one where the airline has, in an effort to con the public, charged some make believe tax. Continental acted as an agent of the IRS and reasonably believed that Congress would extend the tax and exercised its colorable authority to charge the tax. The plaintiff has brought a tax refund

case not in a "literal sense," but in a real sense.

At the time of the magistrate judge's opinion, neither the Seventh or Fifth Circuit's had spoken on this issue, but since then, the plaintiff has attempted to distinguish those cases by arguing that Continental could not reasonably believe that Congress could have extended the tax because Eisenman purchased her ticket on December 31, 1995, "a Sunday, subsequent to the last business day of 1995, after Congress recessed for the New Year's holiday." Plaintiff's letter to court, dated March 26, 1997 ("*Kaucky* letter."). While this is true, the reasoning of *Kaucky* still supports this court's conclusion. Although it is fair to say that Congress could not have extended the tax until sometime after January 2, 1996, the history of the excise tax indicates that Congress was extremely likely to reenact the tax in early 1996. That history of the act justified Continental's decision on December 31, 1995 to collect the 10% excise tax even though it was set to expire for travel on the next day. The situation was not one where Eisenman planned to travel on January 1, 1996.

To make a *per se* rule and conclude that there must be some tax in existence to invoke the protection of Section 7422 would undermine the federal tax system. For example,

anytime a taxpayer thought he could prove that his employer had erroneously withheld a portion of his salary for federal income tax he would have an action in state court against the employer. The state court might side with the taxpayer and order the employer to refund the money. The federal government, not having been sued in the state court—indeed not having consented to be sued in state courts and so not having waived its sovereign immunity from suit in those courts—would not be bound by the judgment. It might therefore refuse to credit the employer with the amount of tax that the state court had ordered refunded to the employee— and the employer would be caught in the middle. *See Kaucky, supra,* at 351.

---

4. The parties stipulated to this fact.

Given the purpose of the IRC, there may be cases where a plaintiff seeks a refund of monies collected under a technically non-existent tax, which should still be characterized as a tax refund case. This is one of those cases.

### ii. The enforcement mechanism

■■■ In addition to characterizing this case as one for a tax refund, an analysis under *Railway*'s first prong requires that this court examine whether the IRC contains civil enforcement provisions within the scope of plaintiff's claims. To satisfy this first prong, this court must find that the IRC creates a federal cause of action vindicating the plaintiff's interest. *See Goepel, supra,* at 311–12. However, the IRC need not provide the same remedy available under state law, but just some vindication for the same interest. *See Railway, supra,* at 942 n. 2. The IRC provides that where a tax has been erroneously or illegally assessed, the aggrieved party must file an administrative claim with the Secretary of the Treasury. *See* 26 U.S.C. § 7422(a); *Sigmon, supra,* at 1203; *Kaucky, supra,* at 350. If that claim is unsuccessful, the plaintiff may pursue a claim against the United States for a tax refund. Because the IRC provides remedies for a tax refund of which the plaintiff in this case may avail herself, I find that the first *Railway* prong is satisfied.

### B. Railway's Second Prong: Congressional Intent

As noted above, the "complete preemption" doctrine is limited to extraordinary circumstances and for that reason, the Third Circuit has identified an additional prong of the analysis—evidence of congressional intent. *See Railway, supra,* at 942. Under this prong, the court must determine whether there exists a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway, supra,* at 942. As I have already stated, the *Railway* test is the apotheosis of the Third Circuit's interpretation of two Supreme Court cases: *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) and *Metropolitan Life Insurance v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). To further understand what is meant by congressional intent, this court will explore the reasoning of those opinions.

In *Avco,* the Supreme Court found that the "pre-emptive force" of Section 301 [of the LMRA] was "so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and labor organization.' Any such suit is purely a creature of federal law...." *Franchise Tax Board v. Construction Laborers,* 463 U.S. 1, 23, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983). Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

*Avco* did not explicitly instruct lower courts to look for affirmative evidence of congressional intent, but the Court clarified that element in *Metropolitan Life,* a case which found Section 502(a)(1) of ERISA completely preemptive. Section 502(a)(1) establishes an enforcement mechanism for plaintiffs to recover benefits and enforce or clarify rights under an employee benefit plan. Based upon Section 502(a)(1), alone, and "[i]n the absence of explicit direction from Congress," the Court concluded, the question of complete preemption would be a "close one." *Metropolitan Life, supra,* at 64, 107 S.Ct. at 1546–47. But a jurisdictional subsection, Section 502(f), which paralleled the language of Section 301 of LMRA, persuaded the court of Congress's intent. That section provides:

> The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant relief provided for in subsection [502(a) ].

29 U.S.C. 1132(f).

That this language demonstrated congressional intent was "confirmed" by the statute's legislative history which prescribes the following: "[a]ll such actions in Federal or

State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the [LMRA.]." *Metropolitan Life, supra*, at 65–66, 107 S.Ct. at 1547.

*Metropolitan Life* embraces the "complete preemption" doctrine cautiously and in a concurring opinion, Justice Brennan warned that the

> decision should not be interpreted as adopting a broad rule that any defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has clearly manifested an intent to make causes of action ... removable to federal court."
>
> *Id.* at 67–68, 107 S.Ct. at 1548 (Brennan, J. concurring).

In *Railway*, the Third Circuit relies upon this language in its discussion of congressional intent. Unfortunately, the jurisprudence of the intent prong has not evolved because the Third Circuit has had little opportunity to elaborate upon it. In all of the Third Circuit's cases, the court has "foundered on the first prong of [its] test." *Spellman v. Meridian Bank*, 1995 WL 764548, *20 (3d Cir.1996) (Scirica, J., dissenting) (reversing district court opinion in *Ament v. PNC National Bank*, 825 F.Supp. 1243 (W.D.Pa. 1992), *vacated*, Opinion dated February 16, 1996, district court *affirmed without opinion*, *Deffner v. Corestates Bank of Delaware, N.A.*, 92 F.3d 1170 (3d Cir.1996)). By vacating *Spellman* and affirming the district court without opinion, the Third Circuit has left the district courts guessing on how to apply the congressional intent prong.

In the *Spellman* opinion that was eventually vacated, the court narrowly construed Supreme Court precedent. The majority of the panel found that neither Section 86 of the National Bank Act nor Section 521 of Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA")—the civil enforcement provisions for individuals charged excessive interest by national banks and federally insured state banks, respectively—completely preempts state law. The court reasoned that neither act "contained a juris-

dictional provision evidencing congressional intent to permit removal of the sort relied upon in *Avco* and *Metropolitan Life*." *Id.* at *6. Nor, the court concluded, had the defendant "pointed to congressional language suggesting that parties may bring suit against banks in federal court without regard to the citizenship of the parties or the amount in controversy." *Id.* However, the Third Circuit implicitly declined to adopt that approach when it affirmed the district court opinion.

In the district court's opinion in *Ament*, the court concluded that Congress had evidenced its intent by creating an "exclusive federal remedy in a federal statute," thereby "enabling ... invocation of federal jurisdiction." *Ament, supra*, at 1249. Whereas the vacated opinion in *Spellman* had declined to invoke "complete preemption" solely because the statutory language did not mirror that in *Avco* and *Metropolitan Life*, the district court applied a broader construction of Supreme Court jurisprudence. As Judge Scirica's dissenting opinion in *Spellman* explains, the Supreme Court's statements in *Metropolitan Life* made clear that ERISA provided not just sufficient, but "unusually clear evidence of congressional intent," thereby leaving "open the possibility that there are instances where congressional intent is less clear but nevertheless sufficient to support a finding of complete preemption." *See Spellman, supra*, at *21 (Scirica, J., dissenting). By vacating *Spellman* and affirming the lower court opinion in *Ament*, the court did not provide any explicit guidance on what constitutes sufficient congressional intent, but the decision, itself, expresses the court's disinclination to adopt the narrow approach taken in the original *Spellman* opinion.

■ In the instant case, without citing any legislative history, Continental argues that three jurisdictional sections provide affirmative evidence of Congressional intent to remove this case: 26 U.S.C. § 7422 and 28 U.S.C. §§ 1340, 1346(a)(1). I need only look at two. First, there is the language of Section 7422 which, as I have already noted, provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any inter-

nal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary.

26 U.S.C. § 7422.

Second, 28 U.S.C. § 1346(a)(1), "which must be read in conformity with .... § 7422," (*see United States v. Dalm*, 494 U.S. 596, 601, 110 S.Ct. 1361, 1364, 108 L.Ed.2d 548 (1990)), provides that:

The district courts have original jurisdiction, concurrent with the United States Court of Federal Claims, of ... [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

When these two sections are read together, Continental argues, the statutes indicate that Congress intended that plaintiffs pursue all tax refund cases, first through the administrative procedure anticipated by Section 7422 and if that fails, against the United States in federal court.

In his opinion, the magistrate judge declined to adopt this argument because "[n]either the explicit statutory language nor the legislative history support the interpretation that there should be complete preemption." *See* October Opinion at 4. However, the magistrate judge's reasoning resembles that used by the majority in the vacated *Spellman* opinion and does not necessarily reflect Third Circuit law. He was most impressed by the Supreme Court's instruction to construe the doctrine conservatively, (*see* October Opinion at 3), and by the fact that the Supreme Court has only found complete preemption under two statutes, Section 301 of the LMRA and Section 502 of ERISA. Because, as he sees it, the language in Section 7422 falls short of that in *Metropolitan Life Insurance*, he rejects Continental's argument.

I am not inclined to follow the magistrate judge because there does exist affirmative evidence of congressional intent to make tax refund cases removable. First, I find instructive a comparison of the language of ERISA's Section 502(f) approved by the Supreme Court and 28 U.S.C. § 1346. Both grant the federal courts original jurisdiction, but Section 502(f) creates that jurisdiction "without respect to the amount in controversy or the citizenship of the parties." That difference is insignificant. As the case law makes clear, Section 7422 provides the exclusive remedy for individuals seeking tax refunds, and under that statute, the only proper defendant is the United States. *See Sigmon v. Southwest Airlines Company*, 110 F.3d 1200, 1204 (5th Cir.1997); *Kaucky v. Southwest Airlines*, 109 F.3d 349 (7th Cir. 1997); *Lehman v. USAIR*, 930 F.Supp. 912, 916 (S.D.N.Y.1996). Under settled principles of sovereign immunity, "the United States, as sovereign, is 'immune from suit' save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction." *See United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). "The power to consent to [tax refund] suits is reserved to Congress." *Id.* By enacting 26 U.S.C. § 7422 and 28 U.S.C. § 1346, Congress gave the United States' consent to be sued in federal court after a plaintiff has exhausted its administrative remedies. Notably, Congress did not create any jurisdiction in the state courts and thereby established exclusive jurisdiction in the federal courts for tax refund suits. Because exclusive federal jurisdiction exists, Congress did not need to copy the language of Section 502(f) which establishes federal jurisdiction "without respect to the amount in controversy or the citizenship of the parties." In a tax refund, exclusive federal jurisdiction already exists because only the United States, itself, may be sued.

In *Rosciszewski v. Arete Associates*, 1 F.3d 225 (4th Cir.1993), the Fourth Circuit invoked complete preemption in an analogous case. *Rosciszewski* considered the preemptive effect of Section 301 of the Copyright Act which creates an exclusive federal remedy for all actions implicating rights guaranteed by the Act. In addition to the statute's broad "preemption provision," the court relied upon a jurisdictional section, 28 U.S.C.

§ 1338(a), which provides that "[t]he district courts shall have original jurisdiction of Congress relating to copyrights.... Such jurisdiction shall be exclusive of the courts of the states in ... copyright cases." *See Id.* at 232. The court found significant that while the Congress had provided concurrent jurisdiction in state and federal courts over LMRA and ERISA actions, it had empowered the district courts with exclusive jurisdiction over copyrights claims. *See Id.* Thus, "although Congress did not use language virtually identical to that contained in the jurisdictional provisions governing suits under the LMRA or ERISA, we view the grant of exclusive original jurisdiction over copyright claims to the district courts as strong evidence that Congress intended copyright litigation to take place in federal courts." *Id.* Similarly, in the instant case, not only has Congress created exclusive jurisdiction in the federal courts to hear tax refund cases, but it has required that administrative remedies be exhausted in a federal agency.

Finally, it should not matter that Eisenman has named Continental and not the United States as the defendant. In *Kaucky,* the Seventh Circuit viewed the airline as an agent of the government. *Kaucky, supra,* at 351. Moreover, the well pleaded complaint focuses on the claims of the complaint and not necessarily the defendant. If the court has jurisdiction over all tax refund cases, that is sufficient to establish jurisdiction. Whether the plaintiff has named the proper defendant is an issue that may be the basis of a motion to dismiss, but until then, this court retains jurisdiction over these kinds of cases.

While the Third Circuit has not spoken to Congress's intent in enacting Section 7422, the Seventh Circuit, in *Kaucky,* has found that section completely preemptive. In *Kaucky,* Chief Judge Posner does not address the intent issue at length, but simply notes that where a plaintiff seeks a refund of federal taxes, that suit "arises under federal law, [specifically the Internal Revenue Code] (and hence removable.... )" *Kaucky, supra,* at 350 (citing 26 U.S.C. § 7422(a); 28 U.S.C. § 1346).

In light of the foregoing, I find that the grant of exclusive jurisdiction to the federal district courts over tax refund cases combined with the preemptive force of the IRC compels the conclusion that Congress intended that tax refund cases arise under federal law. Continental has satisfied the second prong of *Railway.*

## V. Conclusion

For the reasons detailed above, the magistrate judge's decision to remand this case shall be **REVERSED.** Federal question jurisdiction exists and therefore, the case is removable.